## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

### CASE NO. _____

| | |
|---|---|
| **JANE SIMPSON, on Behalf of Herself and All Others Similarly Situated,** | **CLASS ACTION COMPLAINT** |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **vs.** | |
| **CITIZENS BANK,** | |
| **Defendant.** | |

### CLASS ACTION COMPLAINT

Plaintiff, Jane Simpson, through undersigned counsel, on behalf of herself and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

### INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant, Citizens Bank ("Citizens Bank" or the "Bank"), arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

2.      In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Citizens Bank.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.  A recent FDIC report

estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.          In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks brought in $37.1 billion in overdraft charges alone.*  Operating 220 banking centers across three states, Citizens Bank benefits greatly from these staggering charges.

4.          Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.          Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries,

the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.        The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.        Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Citizens Bank routinely processes such transactions and then charges its customers an overdraft fee of $36 – even when the transaction is for only a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Citizens Bank.  Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Citizens Bank failed to adequately disclose to its customers that they could elect to opt out of overdraft protection.

8.        In many instances, these overdraft fees cost Citizens Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not have been actually overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.        Thus, it was through manipulation and alteration of customers' transaction records that Citizens Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a resident of a different state than Citizens Bank.  In addition this Court has original jurisdiction of this action pursuant to 28 U.S.C. 1331 because this action arose under federal law, specifically, the Electronic Funds Transfer Act, 15 U.S.C. 1693, *et seq*. ("EFTA"), and Regulation E, 12 C.F.R. Part 205 (*see* Fifth Claim for Relief, *infra*).

11.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391 because Citizens Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

12.      Plaintiff, Jane Simpson, is a resident of the State of Michigan.

13.      Citizens Bank is a state bank chartered under the laws of the State of Michigan and maintains its principal place of business in Flint, Michigan.  Among other things, Citizens Bank is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts.  Citizens Bank operates more than 220 banking centers in Michigan, Ohio, and Wisconsin.

## CLASS ALLEGATIONS

14.     Plaintiff brings this action on behalf of herself and all others similarly situated

pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality,

adequacy, predominance, and superiority requirements of Rule 23.

15.     The proposed classes are defined as:

> All Citizens Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Citizens Bank's practice of re-sequencing debit card transactions from highest to lowest dollar amount (the "National Class").

> All Citizens Bank customers having accounts at branches in the state of Michigan for the purpose of asserting claims under the Michigan Consumer Protection Act, M.C.L. § 445.903, *et seq.* (the "Michigan State Subclass") (*see* Sixth Claim for Relief, *infra*).

> The National Class and the Michigan State Subclass are collectively referred to as the "Classes."

16.     Plaintiff reserves the right to modify or amend the definition of the proposed

Classes before the Court determines whether certification is appropriate.

17.     Excluded from the Classes are Citizens Bank, its parents, subsidiaries,

affiliates, officers and directors, any entity in which Citizens Bank has a controlling interest, all

customers who make a timely election to be excluded, governmental entities, and all judges

assigned to hear any aspect of this litigation, as well as their immediate family members.

18.     The members of the Classes are so numerous that joinder is impractical.  The

Classes consist of thousands of members, the identity of whom is within the knowledge of and

can be ascertained only by resort to Citizens Bank's records.

19.     The claims of the representative Plaintiff are typical of the claims of the

Classes in that the representative Plaintiff, like all Class members, was charged overdraft fees by

Citizens Bank as a result of its practice of re-sequencing debit card transactions from highest to

lowest dollar amount.  The representative Plaintiff, like all Class members, has been damaged by Citizens Bank's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges.  Furthermore, the factual basis of Citizens Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

20.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

21.     Among the questions of law and fact common to the Classes are whether Citizens Bank:

a.     Did not clearly disclose and/or refused to allow its customers to opt out of its overdraft protection program;

b.     Did not obtain affirmative consent from its customers prior to processing transactions that would result in overdraft fees;

c.     Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

d.     Manipulated and reordered transactions so that it can increase the number of overdraft fees it imposes;

e.     Manipulated and reordered debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

f.     Imposed overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

g.      Fails to provide customers with accurate balance information;

h.      Delayed posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

i.      Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

j.      Breaches its covenant of good faith and fair dealing with Plaintiff and other members of the Classes through its overdraft policies and practices;

k.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

l.      Converts money belonging to Plaintiff and other members of the Classes through its overdraft policies and practices;

m.      Is unjustly enriched through its overdraft policies and practices; and

n.      Violates the consumer protection acts of certain states through its overdraft policies and practices.

22.      Other questions of law and fact common to the Classes include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Classes are entitled.

23.      Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Citizens Bank's account agreements and other related documents.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

24.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

25.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Citizens Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Citizens Bank's misconduct will proceed without remedy.

26.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.     Citizens Bank

27.     According to its website, Citizens Bank has over $9 billion in assets and operates over 220 banking locations in communities throughout Michigan, Ohio, and Wisconsin.

28.     Citizens Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by Citizens Bank for customers who open a

checking account is a debit card, also known as a check card or ATM card. Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs"). Whether the card is used to execute POS transactions or to withdraw cash from ATMs, the transaction is processed electronically. As a result, Citizens Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

29.     Citizens Bank employs sophisticated software to automate its overdraft system. This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

30.     As a result of Citizens Bank's manipulation and alteration of customers' transactions records, funds in a customer's account were depleted more rapidly and more overdraft fees were likely to be charged for multiple smaller transactions. Indeed, overdraft charges were likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur. For example, if a customer, whose account has a $50 balance at the time Citizens Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing five overdraft fees on the customer. Conversely, if the $100 transaction was debited last – consistent with the actual order of transactions – only one overdraft fee would be assessed. *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

**B.**        **Citizens Bank's Relevant Customer Documents Regarding Overdrafts**

31.        Plaintiff and all members of the Classes maintain or maintained a checking account with Citizens Bank.  The terms of Citizens Bank's checking accounts are contained in standardized account holder agreements (the "Deposit Agreement"), presented to its customers on a "take it or leave it" basis, drafted and imposed by Citizens Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.  Plaintiff is not in possession of the Deposit Agreement at issue in this lawsuit and upon information and belief said Agreement is in the possession of the Bank.[1]

32.        The Deposit Agreement and, upon information and belief, related documents failed to disclose to customers that they had the option to "opt out" from the Bank's overdraft scheme, although it is possible for them to opt out upon request.

**C.**        **Citizens Bank's Re-Ordering of Checking Account Transactions**

33.        At all material times, in an effort to maximize overdraft revenue, Citizens Bank manipulated and reordered debits from highest to lowest dollar amount during given periods of time.  Citizens Bank reordered transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.  This practice violated the consumer protection laws of certain states and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

---

[1] As a result of the overdraft fee litigation taking place throughout the country, Citizens Bank has recently changed its reordering practices.  As embodied in its most current deposit agreement – which is not at issue in this lawsuit – Citizens Bank currently posts customers' transactions in chronological order.  However, this change does nothing to remedy the past wrongs to Plaintiff and the Classes.  They do not retroactively reverse the charges wrongfully debited from their accounts, nor do they prevent Citizens Bank from resuming its previous unfair and unconscionable methods of business in the future.  All references to the Deposit Agreement in this Complaint explicitly exclude the most current deposit agreement described herein.

34.        At all material times, Citizens Bank misled its customers regarding its reordering practices.  Upon information and belief, the Deposit Agreement failed to state that the Bank will reorder debit transactions from highest to lowest dollar value.  In addition, upon information and belief, the Deposit Agreement failed to stated that the Bank grouped together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reordered them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Deposit Agreement and its customers' reasonable expectations.  Further, upon information and belief, the Deposit Agreement failed to give the period of time in which the Bank processed and reordered batches of transactions.  The Bank's practices thus violated the covenant of good faith and fair dealing implied in the Bank Deposit Agreement as well as the consumer protection laws of numerous states.

35.        Citizens Bank's website is littered with deceptive representations.  Citizens Bank claims that customers can use internet banking in order to receive detailed information about their account, including balances and the dates of transactions.  Contrary to Citizens Bank's advertisements and representations, the online account features are not a means by which consumers can gain control of their finances or effectively manage their accounts.  In fact, the inaccurate and unreliable information displayed in the online account information on the Bank's website dupes consumers into generating overdraft fees for Citizens Bank.

36.        Transactions involving debit cards used by Citizens Bank customers, including the withdrawal of cash from ATMs and POS transactions with vendors, are processed electronically.  As a result, Citizens Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

37.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Citizens Bank's posting system, it failed to post charges in the order in which they are assessed or received.  Citizens Bank developed a policy and employs a practice whereby account charges and debits were posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

38.     Instead of processing such transactions in chronological order, Citizens Bank processed them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

39.     Citizens Bank refrained from immediately posting charges to a customer's account as it receives them – sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, Citizens Bank was able to amass a number of charges on the account.  Subsequently, Citizens Bank posted all of the amassed charges on a single date.  When the group of charges was eventually posted to the customer's account, Citizens Bank posted them in order of largest to smallest – not in the order in which they were received or in the order in which they were charged.  This delayed posting resulted in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevented customers from ascertaining the accurate balances in their accounts.

40.     Citizens Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, was specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

41.     Citizens Bank enforced an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest dollar amount, and were held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Citizens Bank's processing practices substantially increased the likelihood that customers' smaller charges would result in multiple overdraft fees.  The practices provided Citizens Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

42.     Citizens Bank also assesses overdraft fees at times when actual funds in the customer's account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Citizens Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

43.     A debit card can be used to make a purchase in two ways:  (1) an Automated Clearing House ("ACH") transaction in which a customer enters his/her PIN number at the point of sale; or (2) an "offline signature" transaction, in which the debit card is treated like a credit card and the customer usually is required to sign a receipt.  In the former, the money is debited from the account instantaneously.  In the latter, the "offline signature" transaction occurs in two parts:  first, authorization for the purchase amount is obtained by the merchant.  Second, the transaction is not actually "settled" (that is, money between the bank and the merchant does not change hands) until the merchant submits the transaction to the bank sometime after the customer's purchase.  Before settlement, "authorization holds" are placed on the customer's account, preventing access to money so held.  For some transactions, the authorization hold is for an amount larger than the purchase actually made by the customer.  Citizens Bank charges an

overdraft fee when the authorization hold amount—not the purchase price—pushes an account balance into negative territory.

44.     Such "authorization hold" policies, and the extent to which they are used by Citizens Bank to charge overdraft fees, are inconsistent with Citizens Bank's Deposit Agreement.

45.     Upon information and belief, the terms of the Deposit Agreement fail to alert customers that they must often keep a large cushion of funds in their account in order to guard against an overdraft fee even when customers do not spend more than the funds in their account, and are materially deceptive.  Accordingly, Citizens Bank charges customers overdraft fees even when there are sufficient funds in customers' accounts to cover transactions.

46.     Charging an overdraft fee when in fact an account has never been over-drafted is materially deceptive.  By charging overdraft fees when in fact the customer's account has not been over-drafted, Citizens Bank breached its contract with Plaintiff.

47.     As a result, Plaintiff and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

**D.      The Bank Charges Overdraft Fees Even When It Never Had to Pay Out More Funds Than Were in the Customer's Checking Account**

48.     Citizens Bank does not always follow the procedure outlined in Section C, *supra*.  Instead, for certain transactions, the Bank creates "theoretical" overdrafts, explained below in more detail, when the customer's account was never actually overdrawn.

49.     As previously stated, a debit card can be used to make a purchase in two ways: an "ACH" transactions in which a customer enters his/her PIN number at the point of sale; or an "offline signature" transaction.  In the former, the money is debited from the account nearly

- 14 -

instantaneously.  On the other hand, the "offline signature" transaction occurs in two parts: first, authorization for the purchase amount is obtained by the merchant.  When a merchant swipes a customer's debit card, the credit card terminal connects, via an intermediary, to the customer's bank, which verifies that the customer's account is valid and that sufficient funds are available to cover the transaction's cost.  At this step, Citizens Bank holds the funds and deducts them from the bank balance, but does not yet transfer the funds to the merchant.  At some later time, the settlement process begins, wherein the funds are transferred from the customer's accounts to the merchant's accounts.  This process is not instantaneous: it can take as long as several days for funds to be deposited in the merchant's account.  The actual charge is not put through until the merchant submits its batch of transactions and the banking system transfers the funds.  While the merchant has obtained authorization from the Bank by swiping the card through its credit card terminal, the actual balance with the Bank does not change until settlement, because the merchant submits the transaction to the Bank some time after the customer's purchase.

50.     Citizens Bank never discloses the difference between these two methods of using a debit card in its Deposit Agreement.

51.     Citizens Bank uses this gap between authorization and settlement to its advantage to create an overdraft that never actually occurs and is strictly theoretical.  The Bank retroactively constructs a picture of what the account balance would have been had all transactions settled immediately, even when there are funds in the account to cover the purchases at the time of settlement.  That is, Citizens Bank makes overdraft fee determinations neither at the time of settlement, nor at the time of authorization.  Rather, at the time of settlement the Bank charges overdraft fees as it had settled the transactions immediately.  This is a fiction, strictly created to advantage the bank and disadvantage its customers.  Because the time between

authorization and settlement is often one in which customers make deposits to their accounts to cover debits, Citizens Bank's policy is designed solely to charge more customers overdraft fees. This policy serves no function in ensuring the soundness or efficiency of the banking system. These overdrafts are "theoretical" because due to the gap between authorization and settlement, the customer's account never actually was overdrawn, and overdraft fees are charged without cause ("Theoretical Overdraft"). Such Theoretical Overdrafts, further, are hidden on account statements issued by the Bank, which often show overdraft fees even where the account balance is never shown to be negative.

52.   A Theoretical Overdraft is especially egregious when a customer has deposited money on the same day that a supposed "overdraft" transaction occurred, but the funds are not made available immediately per Bank policy. That is, the Bank creates a notional picture of the account balance as if all debits settled immediately, but does not create a notional picture of the account balance as if all deposits had posted immediately.

53.   The Bank's use of Theoretical Overdrafts unlawfully caused financial losses to Plaintiff and the members of the Classes, and improper gains to the Bank.

54.   Charging an overdraft fee when in fact an account has never been over-drafted is materially deceptive.

55.   In constructing Theoretical Overdrafts, the Bank did not process the electronic funds transfer in a timely fashion, in violation of the Electronic Funds Transfer Act, including § 1693h. Theoretical Overdrafts are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal," per Regulation E, 12 C.F.R. § 205.9.

56.   The Bank's practice of debiting funds from customers' checking accounts before funds are delivered to payees is a "float," and as such is a fee that must be disclosed at the

point of sale or in the Deposit Agreement. Citizens Bank fails to disclose this fee. Lack of disclosure violates the Electronic Funds Transfer Act ("EFTA") and Regulation E, 12 C.F.R. § 205.9.

57.     Such machinations are not explained on Citizens Bank's periodic statements, online account statements, or transaction histories. Citizens Bank simply debits the overdraft fee without any explanation as to how the customer came to be charged that fee. The date of the overdraft fee, in the majority of cases, does not correspond to the date of the transaction, even though Citizens Bank uses the date of the transaction to determine whether an account has gone into overdraft. As such, a customer is unable to make efforts to prevent future overdraft fees.

58.     Because consumers lose an opportunity to earn interest on funds not yet transferred to payees during the period between authorization and settlement, a fee results even when an overdraft fee does not result. These losses are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal," per Regulation E, 12 C.F.R. § 205.9.

59.     The lack of clear explanation on periodic statements violate the Electronic Fund Transfer Act, 15 U.S.C. 1693, *et seq*. ("EFTA"), and Regulation E, 12 C.F.R. Part 205.

   **E.      Citizens Bank's Cloaking of Accurate Balance Information**

60.     Citizens Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information. When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

61.     Citizens Bank claims that online banking provides current balance information about customers' accounts. But in reality, Citizens Bank's computers were set up not to process transactions in the order received — in "real time," but in order from highest to

lowest dollar amount so as to ensure that the maximum number of overdraft charges are imposed on customers' accounts.

62.     Citizens Bank provides inaccurate balance information to its customers through its electronic network.  In certain cases, Citizens Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

63.     Even when Citizens Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customer's account, it encourages the customer to incur more overdraft charges by approving – rather than prudently declining – subsequent debit card purchases and other electronic transactions.

**F.     Citizens Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

64.     At the time its debit cards are used in POS transactions or at ATMs, Citizens Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a predetermined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Citizens Bank could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

65.     Notwithstanding its technological capabilities and actual knowledge, Citizens Bank fails to provide notice to Plaintiff and the Classes that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because Citizens Bank's customers are

- 18 -

not notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers are assessed monetary damages in the form of overdraft fees.

66.     Citizens Bank failed to make Plaintiff and Class members aware that they could opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being charged.

### G.     Citizens Bank Provides False and Misleading Account Balance Information and Does Not Warn Customers that Purchases Will Result in Overdraft Fees, in Violation of Regulation E

67.     When Plaintiff and the members of the Classes made purchases with their debit cards, Citizens Bank did not provide them access to accurate electronic balance information.

68.     In some instances, Citizens Bank actually informs its customers that they have a positive balance when, according to Citizens Bank's own information and policies they have a negative balance.

69.     Even when Citizens Bank has actual knowledge of outstanding transactions, which have created a negative balance in a customer's account, the Bank encourages the customer to incur more overdraft fees by approving further debit card purchases and other electronic transactions.

70.     As the Board of the Federal Reserve stated in the "Discussion" section of its recent Final Rule limiting Overdraft Fees:

> "Even if a consumer checked his or her balance prior to a transaction, the balance may not be updated, so the consumer may inadvertently overdraw his or her account on the belief funds are available.  On balance, the Board believes financial institutions are in a better position to mitigate the information gap by developing improved processing and updating systems, as they have in recent years, and as the Board expects they will continue to do over time."

71.      Citizens Bank's lack of disclosure of overdraft fees violates Regulation E, including 12 C.F.R. § 205.7 and 12 C.F.R. § 205.9, which requires a financial institution to provide an accurate receipt at the point of sale, including total cost and any fees associated with the transaction; and the Electronic Funds Transfer Act, including 15 U.S.C. § 1693c and § 1693h, which requires an institution to provide consumers with account-opening disclosures and to send a periodic statement for each monthly cycle in which an electronic funds transfer has occurred and at least quarterly if no transfer has occurred.

72.      Terminal receipts also must be readily understandable and accurate regarding the amount of the transfer.  According to 12 C.F.R. § 205.9, "[A] financial institution shall may a receipt available to a consumer at the time the consumer initiates an electronic fund transfer at an electronic terminal.  The receipt shall set forth the following information, as applicable: (1) Amount. The amount of the transfer. A transaction fee may be included in this amount, provided the amount of the fee is disclosed on the receipt and displayed on or at the terminal."

73.      With specific regard to the debit card transactions, which result in an overdraft fee, the Bank does not disclose such fees "at the time the consumer initiates an electronic fund transfer."  These overdraft fees are "transaction fees" that must be "disclosed on the receipt and displayed on or at the terminal," per Regulation E.

74.      Upon information and belief, at no time did the Bank's online account information warn Plaintiff that she had overdrawn, or were going to overdraw, her checking accounts with further purchases.

**H.      Citizens Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

75.      By engaging in the conduct described herein, Citizens Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on

Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit A.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

76.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

77.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id*.

78.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they

access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit B.

79.     Citizens Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer. 73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

80.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit C, finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

81.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



**I.**     **Citizens Bank's Unconscionable Provisions and Policies**

82.     Citizens Bank's overdraft policies and practices are or were unconscionable in the following respects, among others:

a.     Upon information and belief, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.     The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c. The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d. The Deposit Agreement and related documents, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e. Upon information and belief, the Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it did not unambiguously state that the Bank always reordered debits from high to low, even though Citizens Bank *always* reordered transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

**J.        Citizens Bank's Overdraft Practices Harmed Plaintiff**

83. Citizens Bank's wrongful overdraft policies and practices described above harmed Plaintiff and members of the Classes. The following allegations regarding the named Plaintiff are made for purposes of illustrating the harm and damage sustained by Plaintiff and members of the Classes as a result of Citizens Bank's wrongful overdraft policies and practices.

84. Plaintiff, Jane Simpson, is a current checking account customer of Citizens Bank.

85. In connection with her account, the Bank issued a debit card to Ms. Simpson. A debit card allows customers to access their checking account funds by using the card to execute a transaction. The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

86.     Citizens Bank wrongfully charged Ms. Simpson multiple overdraft fees on numerous occasions.  For example, Ms. Simpson was charged three overdraft fees on May 13, 2010, in the amount of $36.00 each, for a total of $118.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### Balance Sheet per Citizens' Reordering Scheme
### (Debits Processed from Highest to Lowest)

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 05/13/2010 | | | $72.94 |
| Date Posted | Debit Description | | | |
| 5/13/2010 | DTE ENERGEY PAYMENT | 194.76 | | -121.82 |
| 5/13/2010 | ATM WITHDRAWAL | 62.50 | | -184.32 |
| 5/13/2010 | SERVICE CHARGE FOR ATM WITHDRAWAL | 2.00 | | -186.32 |
| 5/13/2010 | EXXONMOBIL | 6.05 | | -192.37 |
| 5/14/2010 | OVERDRAFT FEE | | 36.00 | -228.37 |
| 5/14/2010 | OVERDRAFT FEE | | 36.00 | -264.37 |
| 5/14/2010 | OVERDRAFT FEE | | 36.00 | -300.37 |
| | | Total Fees | $118.00 | |

87.     If Citizens Bank had not manipulated and reordered Ms. Simpson's transactions from highest to lowest, she would have incurred fewer overdraft fees.

88.     For instance, if Citizens Bank had posted the transactions from lowest to highest, Ms. Simpson would have incurred only one overdraft fee instead of three:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 05/13/2010 | | | $72.94 |
| Date Posted | Debit Description | | | |
| 5/13/2010 | EXXONMOBIL | 6.05 | | 66.89 |
| 5/13/2010 | SERVICE CHARGE FOR ATM WITHDRAWAL | 2.00 | | 64.89 |
| 5/13/2010 | ATM WITHDRAWAL | 62.50 | | 2.39 |
| 5/13/2010 | DTE ENERGEY PAYMENT | 194.76 | | -192.37 |
| 5/14/2010 | OVERDRAFT FEE | | 36.00 | |
| | | Total Fees | $36.00 | |

89.     Likewise, if Citizens Bank had posted the transactions from lowest to highest, Ms. Simpson would have incurred only one overdraft fee instead of three:

### Balance Sheet if Debits Were Processed in Chronological Order[2]

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 05/13/2010 | | | $72.94 |
| Date Posted | Debit Description | | | |
| 5/11/2010 | EXXONMOBIL | 6.05 | | 66.89 |
| 5/12/2010 | SERVICE CHARGE FOR ATM WITHDRAWAL | 2.00 | | 64.89 |
| 5/12/2010 | ATM WITHDRAWAL | 62.50 | | 2.39 |
| 5/13/2010 | DTE ENERGEY PAYMENT | 194.76 | | -192.37 |
| 5/14/2010 | OVERDRAFT FEE | | 36.00 | |
| | | Total Fees | $36.00 | |

90.     Citizens Bank's manipulation and reordering of Ms. Simpson's transactions from highest to lowest dollar value greatly increased the number and total amount of overdraft fees charged to Ms. Simpson's account.  Citizens Bank's reordering scheme resulted in overdraft fees being charged for later, smaller purchases for which sufficient funds existed in Ms. Simpson's account to cover the transactions at the time the transactions were executed.

91.     If Citizens Bank had not manipulated and reordered Ms. Simpson's transactions from highest to lowest dollar value, and instead posted the transactions from lowest to highest, or in chronological order, Ms. Simpson would have been charged fewer overdraft fees.

92.     Citizens Bank failed to notify Plaintiff that she could be assessed overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Citizens Bank never notified Plaintiff at the time she executed the purported insufficient funds transactions described above,

---

[2] The order in which Plaintiff has listed the transactions in this chart reflects the date stamps associated with each transaction as stated on Plaintiff's bank statement.

that her checking account was overdrawn or that they would be charged an overdraft fee as a result of the transactions. Furthermore, Citizens Bank paid, rather than returned, all of the debit charges described above, even though Plaintiff's account purportedly lacked sufficient funds to cover the transactions.

93.     Based on information and belief, the overdraft charges assessed Plaintiff are representative of millions of dollars of overdraft fees that Citizens Bank wrongfully assessed and deducted from its customers' accounts. These wrongful takings are especially egregious considering the fact that the Bank knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

### B.        The Damages Sustained by Plaintiff and the Classes

94.     Citizens Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account. In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id.*

95.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

96.      Thus, as a consequence of Citizens Bank's overdraft policies and practices, Plaintiff and the Classes have been wrongfully forced to pay overdraft fees.  Citizens Bank has improperly deprived Plaintiff and the Classes of significant funds, causing ascertainable monetary losses and damages.

97.      As a consequence of Citizens Bank's improper overdraft fees, Citizens Bank has wrongfully deprived Plaintiff and the Classes of funds to which it had no legitimate claim.

98.      Plaintiff and the Classes had sufficient funds to cover at least some of the transactions for which they and the Classes were charged overdraft fees.  Plaintiff and members of the Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Citizens Bank could impose these wrongful charges.  In many instances, Citizens Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiff and Class members.

99.      All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[3]
### (On Behalf of the National Class)

100.      Plaintiff repeats paragraphs 1 through 99 above.

---

[3]  Certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

101.     Plaintiff and Citizens Bank have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Citizens Bank's Deposit Agreement and related documentation.

102.     Under the laws of the states where Citizens Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

103.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

104.     Where a party to a contract makes the manner of its performance a matter of its own discretion, that discretion must be exercised honestly and in good faith.  If the contract here provides that Citizens Bank may order debit transactions in any order it chooses, then Citizens Bank leaving the ordering process to itself had the option of determining the methodology behind the selected order, had to exercise that discretion to choose the methodology and the order in good faith.

105.     Upon information and belief, Citizens Bank has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein, including, but not limited to, selecting a method of ordering debit transactions that was always high to low, which results in the account depleting at the quickest possible rate and the assessment of more overdraft fees than would have been assessed had the debit transactions posted in any other order.

106.     Plaintiff and the National Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

107.     Plaintiff and members of the National Class have sustained damages as a result of Citizens Bank's breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
#### Unconscionability
**(On Behalf of the National Class)**

108.     Plaintiff repeats paragraphs 1 through 99 above.

109.     Citizens Bank's overdraft policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

a.     Upon information and belief, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.     The Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

10849-001/00092881_1

d.    The Deposit Agreement and related documents, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety; and

e.    Upon information and belief, the Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it did not unambiguously state that the Bank always reordered debits from high to low, even though Citizens Bank *always* reordered transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

110.    Considering the great business acumen and experience of Citizens Bank in relation to Plaintiff and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

111.    The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $36 charge on an overdraft of less than $36) is itself unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

112.    Plaintiff and members of the National Class have sustained damages as a result of Citizens Bank's unconscionable policies and practices as alleged herein.

<u>**THIRD CLAIM FOR RELIEF**</u>
<u>**Conversion**</u>
**(On Behalf of the National Class)**

113.     Plaintiff repeats paragraphs 1 through 99 above.

114.     Citizens Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

115.     Citizens Bank has wrongfully collected overdraft fees from Plaintiff and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

116.     Citizens Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the National Class, without legal justification.

117.     Citizens Bank continues to retain these funds unlawfully without the consent of Plaintiff or members of the National Class.

118.     Citizens Bank intends to permanently deprive Plaintiff and the members of the National Class of these funds.

119.     These funds are properly owned by Plaintiff and the members of the National Class, not Citizens Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the National Class.

120.     Plaintiff and the members of the National Class are entitled to the immediate possession of these funds.

121.     Citizens Bank has wrongfully converted these specific and readily identifiable funds.

122.     Citizens Bank's wrongful conduct is continuing.

10849-001/00092881_1

123.     As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the National Class have suffered and continue to suffer damages.

124.     By reason of the foregoing, Plaintiff and the members of the National Class are entitled to recover from Citizens Bank all damages and costs permitted by law, including all amounts that Citizens Bank has wrongfully converted.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the National Class)

125.     Plaintiff repeats paragraphs 1 through 99 above.

126.     Plaintiff, on behalf of herself and the National Class, assert a common law claim for unjust enrichment.

127.     By means of Citizens Bank's wrongful conduct alleged herein, Citizens Bank knowingly provides banking services to Plaintiff and members of the National Class that are unfair, unconscionable, and oppressive.

128.     Citizens Bank knowingly received and retained wrongful benefits and funds from Plaintiff and members of the National Class.  In so doing, Citizens Bank acted with conscious disregard for the rights of Plaintiff and members of the National Class.

129.     As a result of Citizens Bank's wrongful conduct as alleged herein, Citizens Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the National Class.

130.     Citizens Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

131.     Under the common law doctrine of unjust enrichment, it is inequitable for Citizens Bank to be permitted to retain the benefits it received, and is still receiving, without

justification, from the imposition of overdraft fees on Plaintiff and members of the National Class in an unfair, unconscionable, and oppressive manner.  Citizens Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

132.    The financial benefits derived by Citizens Bank rightfully belong to Plaintiff and members of the National Class.  Citizens Bank should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Citizens Bank traceable to Plaintiff and the members of the National Class.

133.    Plaintiff and members of the National Class have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Violations of the Electronic Funds Transfer Act and Regulation E
#### (On Behalf of the National Class)

134.    Plaintiff repeats paragraphs 1 through 99 above.

135.    Plaintiff asserts a claim based on Regulation E, including 12 C.F. R. § 205.7 and 12 C.F.R. § 205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. § 16932c and § 1693h, because Citizens Bank failed to disclose the fees it charged for making a debit card purchase at the point of sale or in its Deposit Agreement.  The Bank further failed to adequately explain Overdraft Fees on periodic statements.

136.    Plaintiff asserts a claim based on Regulation E, including 12 C.F. R. § 205.7 and 12 C.F.R. § 205.9, and the Electronic Funds Transfer Act, including 15 U.S.C. § 16932c and § 1693h, because the interest Citizens Bank gained on the "float" in a Theoretical Overdraft constituted a "fee" that the EFTA requires be disclosed.

137.     Plaintiff asserts a claim based on the Electronic Funds Transfer Act, including Regulation E, including § 1693h, because in constructing Theoretical Overdrafts, Citizens Bank did not process the electronic funds in a timely fashion.

138.     According to 15 U.S.C. § 1693m(a), whoever violates EFTA is liable to consumer in an amount equal to the sum of –

 (1) any actual damage sustained by such consumer as a result of such failure;

 (2) (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or (B) in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable; and (ii) the total recovery under this subparagraph in any class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

 (3) In the case of any successful action to enforce the foregoing liability, the costs of the action, together with the reasonable attorney's fees as determined by the court.

**SIXTH CLAIM FOR RELIEF**
**Violations of Michigan Consumer Protection Act**
**(On Behalf of the Michigan State Subclass)**

139.     Plaintiff repeats paragraphs 1 through 99 above.

140.     This claim is asserted on behalf of the members of the Michigan State Subclass under the Michigan Consumer Protection Act ("MCPA").

141.     The MCPA, M.C.L. §445.903, *et seq.*, prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."

142.     Citizens Bank violated M.C.L. § 445.903, *et seq.*, by, *inter alia*, employing an unfair and deceptive policy and practice of re-sequencing debit purchases from largest to smallest dollar value.

143.     Specifically, Citizens Bank's policy and practice of re-sequencing debit purchases from largest to smallest dollar value violated, among others, M.C.L §445.903(1)(s), M.C.L. §445.903(1)(y), and M.C.L. §445.903(1)(cc).

144.     As redress for Citizens Bank's repeated and ongoing violations of M.C.L. § 445.903, *et seq.*, Plaintiff and the Class are entitled to, *inter alia*, damages and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring Citizens Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.     Restitution of all overdraft fees paid to Citizens Bank by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.     Disgorgement of the ill-gotten gains derived by Citizens Bank from its misconduct;

4.     Actual damages in an amount according to proof;

5.     Punitive and exemplary damages;

6.     Pre-judgment interest at the maximum rate permitted by applicable law;

7.     Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.          Such other relief as this Court deems just and proper.

Dated: January 20, 2012.

/s/ Robert Gittleman                          /s/ Hassan A. Zavareei
Robert Gittleman, Esq.                       Hassan A. Zavareei
Michigan Bar No.: P14205                 hzavareei@tzlegal.com
r.gittleman@yahoo.com                     Jeffrey D. Kaliel
**ROBERT GITTLEMAN**                  jkaliel@tzlegal.com
**LAW FIRM, P.L.C.**                        **TYCKO & ZAVAREEI**
31731 Northwestern Highway           2000 L Street, N.W.
Suite 101E                                         Suite 808
Farmington Hills, MI 48334             Washington, D.C. 20036
Telephone: (248) 737-3600               Telephone: (202) 973-0900
Facsimile: (248) 737-0084               Facsimile: (202) 973-0950

*Co-Counsel for Plaintiff and the Proposed*   *Co-Counsel for Plaintiff and the Proposed*
*Class*                                                      *Classes*

Jeffrey M. Ostrow
Florida Bar No.: 121452
ostrow@kolawyers.com
Jason H. Alperstein
Florida Bar No.: 064205
alperstein@kolawyers.com
**KOPELOWITZ OSTROW, P.A.**
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

*Co-Counsel for Plaintiff and the Proposed*
*Classes*

*Pro Hac Vice Motions to be Filed*

10849-001/00092881_1                                     - 37 -