**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JANE SIMPSON, on Behalf of Herself and All Others Similarly Situated,** | Case No. 2:12-cv-10267-DPH-RSW |
| **Plaintiff,** | |
| **v.** | Hon. Denise Page Hood |
| **CITIZENS BANK,** | Magistrate Judge R. Steven Whalen |
| **Defendant.** | |
| **SHIRLEY D. LIDDELL, on Behalf of Herself and All Others Similarly Situated,** | |
| **Plaintiff,** | Case No. 2:12-cv-11604-DPH-RSW |
| **v.** | Hon. Denise Page Hood |
| **CITIZENS BANK and CITIZENS REPUBLIC BANCORP, INC.** | Magistrate Judge R. Steven Whalen |
| **Defendants.** | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS AND INCORPORATED MEMORANDUM OF LAW**

Jeffrey M. Ostrow
Jason H. Alperstein
KOPELOWITZ OSTROW P.A.
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

E. Powell Miller (P39487)
Ann L. Miller (P43578)
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Ste. 300
Rochester, MI 48307
epm@millerlawpc.com

Hassan A. Zavareei
Jeffrey D. Kaliel
TYCKO & ZAVAREEI
2000 L. Street, N.W., Suite 808
Washington, D.C. 20036
hzavareei@tzlegal.com

Robert Gittleman (P14205)
ROBERT GITTLEMAN LAW FIRM, P.L.C.
31731 Northwestern Highway
Suite 101E
Farmington Hills, MI 48334
r.gittleman@yahoo.com

Patrick E. Cafferty
CAFFERTY FAUCHER LLP
101 North Main Street, Suite 565
Ann Arbor, MI 48104
pcafferty@caffertyfaucher.com

Allen Carney
Randall K. Pulliam
CARNEY WILLIAMS BATES
PULLIAM & BOWMAN, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
rpulliam@carneywilliams.com

Ruben Honik
Richard M. Golomb
Kenneth J. Grunfeld
GOLOMB & HONIK, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
kgrunfeld@golombhonik.com

*Counsel for Plaintiffs and the Proposed Class*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION.................. ………………………………………1

II.   STATEMENT OF FACTS .................................................................. 3

    A.    Factual Background ................................................................ 3

        1.    Procedural History ..................................................... 4

        2.    Class Counsel's Investigations ................................... 6

    B.    Summary of the Settlement Terms ......................................... 7

        1.    The Settlement Class.................................................. 7

        2.    Relief for the Benefit of the Settlement Class ............ 8

        3.    Class Release ............................................................ 10

        4.    The Notice Program .................................................. 10

            (a)    The Mailed Notice Program........................... 12

            (b)    The Published Notice Program ...................... 13

            (c)    The Settlement Website and Toll-Free Telephone Line .............. 14

        5.    Settlement Administration ........................................ 14

        6.    Settlement Termination............................................. 16

        7.    Class Representatives' Service Awards ..................... 17

        8.    Attorneys' Fees and Costs ........................................ 17

III.  ARGUMENT ................................................................................... 17

    A.    The Legal Standard for Preliminary Approval ..................... 17

    B.    This Settlement Satisfies the Criteria for Preliminary Approval ........................ 20

        1.    This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations.................................. 21

        2.    The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable ........................... 22

            (a)    Likelihood of Success at Trial ...................... 22

            (b)    Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair ...................... 24

            (c)    Complexity, Expense and Duration of Litigation ...................... 26

            (d)    Stage of the Proceedings............................... 27

            (e)    Class Counsel are Experienced in Similar Litigation ................. 28

## TABLE OF CONTENTS

**Page**

(f)     The Settlement is Consistent With the Public Interest................ 30

C.     Certification of The Settlement Class is Appropriate ........................................... 30

D.     The Court Should Approve the Proposed Notice Program, Because it is Constitutionally Sound.......................................................................... 34

E.     The Court Should Schedule a Final Approval Hearing ..................................... 36

IV.     **CONCLUSION** .......................................................................... 36

I.     **INTRODUCTION**

Plaintiffs, Jane Simpson and Shirley D. Liddell (collectively "Plaintiffs"), respectfully move for Preliminary Approval of the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as Exhibit A, which will resolve all claims against Citizens Bank and Citizens Republic Bancorp, Inc. (collectively "Citizens Bank" or the "Bank")[1] in the above-captioned consolidated cases styled *Simpson v. Citizens Bank*, Case No. 2:12-cv-10267-DPH-RSW ("*Simpson*") and *Liddell v. Citizens Bank and Citizens Republic Bancorp, Inc.*, Case No. 2:12-cv-11604-DPH-RSW ("*Liddell*") (collectively "Action").[2]   The Court should grant Preliminary Approval because the Settlement provides substantial relief for the class of Citizens Bank Account holders defined in paragraph 41 of the Agreement ("Settlement Class"), and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.  Indeed, given the significant risks inherent in this Action, the Settlement – which includes Citizens Bank's agreement to pay $2,000,000.00 in cash and $200,000.00 in fees and costs associated with class Notice and Settlement administration – is an excellent result for the Settlement Class.

Plaintiffs sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of Citizens Bank's practice of re-sequencing Debit Card Transactions from highest dollar amount to lowest dollar amount ("Debit Re-sequencing").  Plaintiffs allege that Citizens Bank systemically engaged in Debit Re-sequencing to maximize the Bank's Overdraft Fee revenue.  According to Plaintiffs, Citizens Bank's practices violate the Bank's contractual and good faith duties to the Settlement Class, are substantively and procedurally

---

[1] After this settlement was reached, FirstMerit Bank, N.A., became the successor by merger as of April 13, 2013 to Citizens Bank.

[2] All capitalized terms used throughout this Motion have the same meanings as those found in Section II of the Settlement Agreement.

1

unconscionable, violate state unfair trade practices laws, violate federal law regarding electronic funds transfers, and result in conversion and unjust enrichment.

The Settlement satisfies all Sixth Circuit criteria for settlement approval. One of the keystones of this Settlement is that the reliability of the Bank's data allowed for the identification of almost one hundred percent (100%) of Settlement Class Members. Joint Declaration of Jeffrey M. Ostrow, E. Powell Miller, and Hassan A. Zavareei ("Joint Decl.") ¶ 2, attached hereto as Exhibit B. Thus, identifiable Settlement Class Members who do not opt-out of the Settlement will automatically—without having to do anything at all—receive their *pro rata* share of the Net Settlement Fund. Due to the Bank's excellent maintenance of customer transaction records, there are no claims forms to fill out, and members of the Settlement Class will not be asked to prove that they were damaged as a result of the Bank's practice of Debit Re-sequencing. Instead, Settlement Class Counsel and their expert will use available Citizens Bank data to determine which Citizens Bank checking, savings and demand deposit account holders ("Account holders") were affected by Debit Re-sequencing, and will apply a formula (described in paragraph 76 of the Agreement) to calculate *pro rata* share of the Net Settlement Fund for each identifiable Settlement Class Member who do not opt-out of the Settlement.

Another testament to the reasonableness and fairness of the Settlement is the magnitude of the Settlement Fund. Settlement Class Counsel negotiated a $2,000,000.00 cash payment, which represents approximately thirty percent (30%) of the most likely recovery the Settlement Class could have achieved at trial. This is an excellent recovery in light of the risks Plaintiffs faced. The recovery of that percentage of the probable damages falls well within a reasonable range of recovery. In addition to the cash Settlement Fund, Citizens Bank has agreed to pay $200,000.00 toward the costs of class Notice and Settlement administration—another feature of the Settlement which accrues to the benefit of the Settlement Class. In the face of certain risks

discussed below, this Settlement is eminently fair and reasonable and merits Preliminary Approval.

This Action involves sharply opposed positions on several fundamental legal questions. From the outset, Citizens Bank has always denied liability, argued that the claims are unfounded, asserted a series of defenses, and filed motions to dismiss the Action on several grounds. Those motions remained pending during the Parties' settlement negotiations. The legal risks posed by these issues further supports settlement approval.

Therefore, as detailed below, Plaintiffs respectfully request that the Court take the following initial steps in the Settlement approval process: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Jane Simpson and Shirley D. Liddell as class representatives; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices attached hereto as Exhibits C, D and E; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay the Action against Citizens Bank pending Final Approval of the Settlement; (7) appoint as Class Counsel and Settlement Class Counsel the law firms listed in paragraphs 14 and 42 of the Agreement, respectively; and (8) schedule a Final Approval Hearing to occur no sooner than the week of November 25, 2013 (if convenient for the Court).

## II.     STATEMENT OF FACTS

### A.     Factual Background.

This Action is centered on Citizens Bank's assessment of Overdraft Fees incurred as a result of the Bank's practice of Debit Re-sequencing. Plaintiffs maintain/maintained a checking account with Citizens Bank and regularly used their Citizens Bank Debit Card to make purchases as well as to withdraw funds at ATMs. Plaintiffs allege that Debit Re-sequencing results in more

Overdraft Fees being assessed against Account holders than would otherwise occur if Citizens Bank had processed Debit Card Transactions chronologically.  Plaintiffs also allege that Debit Re-sequencing supports actionable common law and statutory claims.

There have been over 80 similar cases filed throughout the country against numerous banks which challenge the high-to-low debit card reordering practice.  The vast majority of those cases have been consolidated and transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Southern District of Florida and are currently being presided over by Judge James Lawrence King in *In Re Checking Account Overdraft Fee Litigation*, MDL 2036 ("MDL").  Many of those cases have already settled and received either preliminary and/or final approval, while others have not yet reached a similar posture.  The remaining non-MDL cases were filed and remain in various state courts because federal subject matter jurisdiction was not available, or in other district courts (such as this case) when the MDL stopped taking new cases.  Many of the firms that make up Class Counsel are counsel of record for plaintiffs in many of the other cases and have played a significant role in several of the MDL actions.

### 1.   <u>Procedural History.</u>

On January 20, 2012 Plaintiff Jane Simpson filed a Class Action Complaint in the Eastern District of Michigan seeking monetary damages, restitution and declaratory relief from Citizens Bank based on its alleged unfair assessment and collection of Overdraft Fees.  *See generally* Class Action Complaint (DE # 1); Joint Decl. ¶ 5.  Plaintiff Simpson alleged that as a result of Citizens Bank's manipulation of the order in which customers' Debit Card Transactions were posted, customers' funds were depleted more rapidly than they should have been, and Plaintiff and members of the Settlement Class paid more Overdraft Fees than they otherwise should have paid.  Id.  On March 26, 2012, Citizens Bank filed a Motion to Dismiss the *Simpson*

Complaint. Id. ¶ 6.  From the outset, Citizens Bank has always denied liability, argued that the claims are unfounded, highlighted language in the relevant account agreements that it contends expressly advised customers of, and permitted, the Debit Re-sequencing practice at issue, and asserted a series of defenses.  *See generally* Motion to Dismiss (DE # 10); Joint Decl. ¶ 6.

On January 31, 2012, Plaintiff Shirley Liddell filed a similar Class Action Complaint in the Circuit Court of Genesee County, Case No. 12-97556.  Joint Decl. ¶ 7.  Upon Citizens Bank's Motion for Summary Disposition, the case was stayed by the state court by a March 27, 2012 Order.  Id.  Thereafter, on April 9, 2012, Plaintiff Liddell filed a second case against Citizens Bank in the Eastern District of Michigan.  (DE # 1 in Case No. 2:12-cv-11604-DPH-RSW).

On April 19, 2012, Plaintiff Simpson filed her Memorandum In Opposition to the Motion to Dismiss.  (DE # 13).  On May 2, 2012, Citizens Bank filed its Reply in support of its Motion to Dismiss.  (DE # 16).  On June 6, 2012, the Court heard oral argument on Citizens Bank's Motion to Dismiss in *Simpson*.   On June 26, 2012, Plaintiff Liddell filed a Response to Citizens Bank's Motion to Dismiss.  (DE # 28).  On June 29, 2012, Citizens Bank filed its Reply in support of its Motion to Dismiss the *Liddell* Complaint.  (DE # 30).

On July 16, 2012, upon the Parties' stipulation, the Court entered an order consolidating the *Simpson* and *Liddell* cases.  (DE # 32).  On July 28, 2012, an Order was entered by the Circuit Court of Genesee County, dismissing Liddell's state court case without prejudice.

Beginning in October 2012, and prior to engaging in protracted and expensive litigation, the Parties engaged in preliminary settlement discussions.  Joint Decl. ¶ 10.  At that time, pursuant to a Confidentiality Agreement, Citizens Bank provided Settlement Class Counsel aggregate information regarding its Overdraft Fee revenue on Debit Card Transactions, as well

as detailed information regarding its posting order over a several year period.  Id.  Settlement Class Counsel and Plaintiffs' expert analyzed this data.  Id.

Over the course of the next several months, the Parties participated in ongoing arm's length and good faith settlement negotiations.  Joint Decl. ¶ 11.  After much discussion, the Parties reached an agreement on the material terms of a settlement and signed a Summary Agreement, which memorialized, subject to negotiation and execution of the Agreement and subject to Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiffs and the Settlement Class Members who do not opt-out of the Settlement in exchange for Citizens Bank's agreement to pay the sum of Two Million Dollars ($2,000,000.00) to create a common fund for the benefit of the Settlement Class, and to separately pay $200,000.00 toward the costs of class Notice and settlement administration as further detailed below.  Id.

On March 7, 2013, the Parties filed a Notice of Settlement with the Court.  (DE # 36).  On March 27, 2013, as a result of the Notice of Settlement, the Court entered an Order Dismissing Motions Without Prejudice and Staying Dates, pending the submission of a settlement agreement and motion for preliminary approval of the agreement.  (DE # 37).  On April 11, 2013, after almost six (6) months of negotiations, the Parties signed the Agreement. Joint Decl. ¶ 12.

## 2. **Class Counsel's Investigation.**

Class Counsel spent many hours investigating the claims of several potential plaintiffs against Citizens Bank.  Joint Decl. ¶ 13.  Class Counsel interviewed a number of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers.  Id.  This information was essential to Class Counsel's ability to understand the

nature of Citizens Bank's conduct, the language of the Account agreements at issue and potential relief and remedies.  Id.

Class Counsel expended significant resources researching and developing the legal claims at issue.  Joint Decl. ¶ 14.  Class Counsel also spent an enormous amount of time analyzing data regarding Citizens Bank's Overdraft Fee revenue.  Id.  Prior to Settlement, Settlement Class Counsel and Plaintiffs' expert used this data to analyze the range of alleged damages at issue in this case, comparing Overdraft Fees actually charged to the Overdraft Fees that would have been charged had Citizens Bank not employed the challenged practice.  Id. Based on the analysis, the Parties estimate that the $2,000,000.00 cash Settlement Fund represents approximately thirty percent (30%) of the Overdraft Fees incurred as a result of the challenged posting practices.  Id.

After the Parties executed the Summary Agreement in connection with the Settlement, Settlement Class Counsel engaged in extensive settlement-related investigation to determine— among other things—an appropriate plan for allocation of the Settlement Fund.  Joint Decl. ¶ 15. That investigation required Plaintiffs' expert to analyze the relevant transactional data related to Overdraft Fees imposed upon members of the Settlement Class, and to help determine the fairest and most appropriate distribution formula in light of the data that Citizens Bank possessed and maintained.  Id.

**B.  Summary of the Settlement Terms.**

The following is a summary of the material terms of the Settlement.

**1.  The Settlement Class.**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

> All Citizens Bank customers in the United States who had one or more Accounts (whether held individually or jointly) and who, during the Class Period, incurred an Overdraft Fee as a result of Citizens Bank's Debit Re-sequencing.   Excluded from the Settlement Class are all current Citizens Bank employees, officers and directors, and the Judge presiding over this Action.

Agreement ¶ 41.  Class Period "means the period from January 20, 2006, through, and including, January 20, 2012."  Id. ¶ 15.

### 2.      Relief for the Benefit of the Settlement Class.

The Settlement consists of two main components:  (a) a $2,000,000.00 cash Settlement Fund to be distributed to identifiable Settlement Class Members who do not opt-out of the Settlement; and (b) the separate payment of $200,000.00 toward the costs of providing Notice to the Settlement Class and administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.  Agreement ¶¶ 9, 48-49; Joint Decl. ¶ 16.

The Settlement requires Citizens Bank to deposit the $2,000,000.00 cash payment into an Escrow Account within ten (10) calendar days following this Court's Preliminary Approval of the Settlement.  Agreement ¶ 70.  That deposit will create the Settlement Fund, which will be used to pay all distributions to identifiable Settlement Class Members who do not opt-out of the Settlement, as well as attorneys' fees, costs and expenses, and the class representatives' Service Awards sought in this case.  In addition, Citizens Bank will separately pay the costs of Notice and Settlement administration up to a maximum of $200,000.00.  Id. ¶ 49.

Members of the Settlement Class do not have to submit claims or take any other affirmative step to receive relief under the Settlement.  Instead, within thirty (30) days of the Effective Date of the Settlement, Citizens Bank and the Settlement Administrator will distribute the Net Settlement Fund to all identifiable Settlement Class Members who do not opt-out of the

Settlement.  Id. ¶ 78.  Payments to such Settlement Class Members who are Current Account Holders will be made by the Bank crediting such Settlement Class Members' accounts, and notifying them of the credit.  Id. ¶ 83.  The Bank will then be entitled to reimbursement for any such credits from the Net Settlement Fund.  Id.  Past Account Holders and Current Account Holders whose Accounts cannot feasibly be credited will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator.  Id. ¶¶ 83-84.

Identifiable Settlement Class Members who experienced a "Positive Differential Overdraft Fee" and who do not opt-out of the Settlement will receive a *pro rata* distribution of the Net Settlement Fund.  Agreement ¶ 78.  The Positive Differential Overdraft Fee analysis determines, among other things, which Citizens Bank Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used a posting sequence or method for Debit Card Transactions other than ordering them from highest to lowest dollar amount, and how much in additional Overdraft Fees those Account holders paid.  This calculation involves a complex multi-step process described in detail in the Agreement.  Id. ¶¶ 76-77.  The Net Settlement Fund – which will be distributed *pro rata* among identifiable Settlement Class Members who do not opt-out of the Settlement – is equal to the Settlement Fund plus any accrued interest, and less: (a) the amount of any Court-awarded attorneys' fees, costs and expenses to Class Counsel; (b) the amount of any Court-awarded Service Awards to the Plaintiffs; and (c) a reservation of funds for prospective costs of Settlement administration that are not Citizens Bank's responsibility pursuant to the Agreement; and (d) the amount of any costs associated with taxes and investments as to the Settlement Fund.  Id. ¶ 79.

Any uncashed or returned checks will remain in the Settlement Fund for one (1) year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the

Settlement Class Member Payments.  Agreement ¶ 89.  Within one (1) year plus thirty (30) days after the date the Settlement Administrator mails the first Settlement Class Member Payment, any funds remaining in the Settlement Fund shall be distributed as follows:  (a) first, to Citizens Bank to reimburse Citizens Bank for any and all costs it actually paid for class Notice and settlement administration; and (b) second, any remaining funds after payment to Citizens Bank pursuant to section (a) above shall be distributed through a residual *cy pres* program ("Residual *Cy Pres* Program").  Id. ¶ 90.  The Residual *Cy Pres* Program recipient(s) shall be agreed upon by Citizens Bank and Settlement Class Counsel, and approved by the Court.  Id.  The purpose of any Residual *Cy Pres* Program distribution shall be to benefit consumer financial literacy education, and to educate and assist consumers with financial services issues through advisory and related services (excluding litigation).  Id.  Any Residual *Cy Pres* Program distribution shall be paid as soon as reasonably possible following the completion of distribution of funds to the Settlement Class Members.  Id.  The Settlement Fund shall pay all costs associated with the disposition of residual funds through a Residual *Cy Pres* Program.  Id.

### 3.      Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt-out of the Settlement will be deemed to have released Citizens Bank from claims relating to the subject matter of the Action.  The detailed release language can be found in Section XIV of the Agreement.

### 4.      The Notice Program.

The Notice Program in this Settlement (Agreement, Section VIII) is designed to provide the best notice practicable, and is tailored to take advantage of the information Citizens Bank has available about the Settlement Class.   Joint Decl. ¶ 17.   The Notice and Notice Program constitute sufficient notice to all persons entitled to notice.  Id. ¶ 18.  The Notice and Notice

Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.  Id.

The Notice Program is comprised of three parts:  (1) direct mail postcard notice ("Mailed Notice") to all members of the Settlement Class; (2) publication notice ("Published Notice") designed to reach those members of the Settlement Class for whom Mailed Notice is not possible; and (3) a "Long Form" notice containing more detail than the Mailed Notice and Published Notice, that will be available on the Settlement website (www.CitizensBankOverdraftSettlement.com) and via U.S. mail upon request.   Agreement ¶¶ 55-67; Joint Decl. ¶ 19.

All forms of Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; a date by which members of the Settlement may exclude themselves from or opt-out of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; the date of the Final Approval Hearing; and the address of the Settlement Website at which members of the Settlement Class may access the Agreement and other related documents and information.  Agreement ¶ 55; Exhibits C, D and E hereto.

In addition to the information described above, the Long Form notice will also describe the procedure that members of the Settlement Class must follow to opt-out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees, costs and expenses and for Service Awards to Plaintiffs.  Agreement ¶¶ 56-57; Exhibit E hereto.  All opt-outs must be postmarked during the Opt-Out Period, and any objections must be postmarked no later than the last day of the Opt-Out Period (no later than thirty (30) days prior to the Final Approval Hearing).  Agreement ¶¶ 56-57.  For an objection to be valid, it must include: (a) the name of the Action; (b) the objector's name, address, and telephone number; (c) an explanation

of the basis upon which the objector claims to be a Settlement Class Member; (d) all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel; (e) the number of times in which the objector has objected to a class action settlement within the last five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case; (f) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation or any reason related to the objection to the Settlement or fee application; (g) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case; (h) any and all agreements that relate to the objection or the process of objecting – whether written or oral – between objector or objector's counsel and any other person or entity; (i) the identity of all counsel representing the objector who will appear at the Final Approval Hearing; (j) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; (k) a statement conforming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (l) the objector's signature (an attorney's signature is not sufficient).  Agreement ¶ 58.

### (a)    The Mailed Notice Program.

The Settlement Administrator will administer the Mailed Notice program.  Within 21 days from the date that the Settlement Administrator receives from Settlement Class Counsel and Citizens Bank the data files that identify the names and last known addresses of the identifiable

members of the Settlement Class, the Settlement Administrator will run such addresses through the National Change of Address Database, and will mail to all such members of the Settlement Class postcards that contain the Mailed Notice ("Initial Mailed Notice").  Agreement ¶ 61.

The Settlement Administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable.  Agreement ¶ 62.  No later than seventy (70) days before the Final Approval Hearing, the Settlement Administrator will complete the re-mailing of Mailed Notice postcards to those members of the Settlement Class whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process"). Id. ¶ 62.  Within seven (7) days after the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator will provide Settlement Class Counsel and Citizens Bank an affidavit that confirms that the Mailed Notice Program was completed in a timely manner.  Id. ¶ 63.  Settlement Class Counsel will file such affidavit with the Court in conjunction with Plaintiffs' motion for Final Approval of the Settlement.  Id.  The Mailed Notice Program (which is comprised of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than seventy (70) days before the Final Approval Hearing. Id.

### (b)      The Published Notice Program.

The Notice Administrator shall administer the Published Notice program, which shall be comprised exclusively of one-time appropriate sized advertisements in publications to be agreed upon by Citizens Bank and Settlement Class Counsel.  Agreement ¶ 64.  The Published Notice program shall be completed no later than seventy (70) days before the Final Approval Hearing. Id.  Within seven (7) days after the date the Settlement Administrator completes the Published Notice program, the Settlement Administrator will provide Settlement Class Counsel and Citizens Bank with one or more affidavits that confirm that Published Notice was given in

accordance with the Preliminary Approval Order.  Class Counsel will file such affidavit with the Court in conjunction with Plaintiffs' motion for Final Approval of the Settlement.  Agreement ¶ 65.

(c)      <strong><u>The Settlement Website and Toll-Free Telephone Line.</u></strong>

The Settlement Administrator will establish a Settlement Website as a means for members of the Settlement Class to obtain notice of, and information about, the Settlement. Agreement ¶ 45.  The Settlement Website will be established as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program.  Id.  The Settlement Website will include hyperlinks to the Settlement, the Long Form Notice, the order preliminarily approving this Settlement and such other documents as Settlement Class Counsel and Citizens Bank agree to post or that the Court orders posted on the Settlement Website.  Id. These documents will remain on the Settlement Website at least until Final Approval.  Id.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of members of the Settlement who call with or otherwise communicate such inquiries.  Agreement ¶ 54(d).

<strong>5.      <u>Settlement Administration.</u></strong>

The Settlement Administrator is Epiq Systems, Inc. ("Epiq"), one of the leading class action settlement administrators in the United States. Epiq's responsibilities include the following:

a.      Obtain from Citizens Bank and Settlement Class Counsel the name and address information (to the extent it is reasonably available) for members of the Settlement Class, and, to the extent necessary, verify and update the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing

14

distribution checks to Past Account Holders, and to Current Account Holders where it is not feasible or reasonable for Citizens Bank to make the payment by a direct credit to the Settlement Class Members' Accounts;

        b.     Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

        c.     Establish and maintain the Settlement Website;

        d.     Establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of persons who call with or otherwise communicate such inquiries;

        e.     Respond to any mailed inquiries from members of the Settlement Class;

        f.     Process all requests for exclusion from members of the Settlement Class;

        g.     Provide weekly reports and a final report to Settlement Class Counsel and Citizens Bank's Counsel that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

        h.     At Settlement Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit that identifies each member of the Settlement Class who timely and properly requested exclusion from the Settlement Class;

        i.     Process and transmit distributions to Settlement Class Members from the Net Settlement Fund;

        j.     Perform all tax-related services for the Escrow Account as provided in the Agreement;

k.      Pay invoices, expenses and costs upon approval by Settlement Class Counsel and Citizens Bank as provided in the Agreement; and

l.      Perform the duties of Escrow Agent as described in the Agreement, and any other Settlement-administration-related function at the instruction of Settlement Class Counsel and Citizens Bank, including, but not limited to, verifying that Settlement Funds have been distributed as required by Sections XII and XIII of the Agreement. Agreement ¶ 54.

### 6.      Settlement Termination.

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court.  Agreement ¶ 101.  Citizens Bank also has the right to terminate the Settlement if the number of members of the Settlement Class who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter agreement executed concurrently with the Agreement by Citizens Bank's Counsel and Settlement Class Counsel.  Id. ¶ 102.  The number or percentage will be confidential except to the Court, which upon request will be provided a copy of the letter agreement for *in camera* review.  Id.

In the event the Settlement is not approved by the Court, or for any reason the Parties fail to obtain a Final Approval Order as contemplated in the Settlement, or termination occurs as provided in the Settlement Agreement, then (a) all the Orders and findings entered in connection with the Settlement shall become null and void and have no further force or effect, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in any other proceeding; (b) all of the Parties' respective pre-Settlement claims and defenses will be preserved, including, but not limited to, Citizens Bank's motions to dismiss, Plaintiffs' right to seek class certification and Citizens Bank's right to oppose class certification; (c) nothing

16

contained in this Order or the Unopposed Motion is or may be construed as any admission or concession by or against Citizens Bank or its successor or Plaintiffs on any point of fact or law; and (d) any discussions, offers, negotiations, or findings associated with the Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose, without prejudice to Plaintiffs' right to seek class certification, and Citizens Bank's right to oppose class certification.  In such event, all Parties to the Action shall stand in the same position as if the Agreement had not been negotiated, made or filed with the Court.

### 7.   **Class Representatives' Service Awards.**

Class Counsel will seek and Citizens Bank will not oppose Service Awards of $5,000.00 for each of the named Plaintiffs.  Agreement ¶ 99.  If the Court approves them, the Service Awards will be paid from the Settlement Fund, and will be in addition to the Settlement Class Member Payments the Plaintiffs will be entitled to under the terms of the Settlement.  Id.  This award will compensate the representatives for their time and effort in the Action and for the risks they assumed in prosecuting the Action against Citizens Bank.  Joint Decl. ¶ 21.

### 8.   **Attorneys' Fees and Costs.**

Citizens Bank will not oppose Class Counsel's request for attorneys' fees of up to thirty-three percent (33%) of the value of the Settlement, as well as reimbursement of costs and expenses incurred in connection with the Action, payable from the Settlement Fund.  Agreement ¶ 95; Joint Decl. ¶ 22.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement. Agreement ¶ 96; Joint Decl. ¶ 22.

## III.   **ARGUMENT**

### A.   **The Legal Standard for Preliminary Approval.**

At the preliminary approval stage, the Court's task is to evaluate whether the Settlement

is within the "range of reasonableness." 4 *Newberg on Class Actions* § 11.26 (4th ed. 2010). Essentially, "[a]ll that is required at the preliminary hearing in order to progress to the fairness hearing is that the proposed settlement be within the range of possible approval … This bar is low …." *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (internal citation and quotation marks omitted). The preliminary review allows the court to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Berry v. School District of City of Benton Harbor*, 184 F.R.D. 93, 97 (W.D. Mich. 1998). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with[in] the range of possible approval, then the Court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001) (quoting *Manual for Complex Litig. (Second)* § 30.44 (1985)).

In determining whether a proposed settlement falls within the range of possible approval, warranting notice, the Court must consider that in weighing the settlement for final approval, its inquiry will be ultimately limited to whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)); *see also Bobbitt v. Academy of Court Reporting, Inc.*, No. 07-10742, 2009 WL 2168833, at *2 (E.D. Mich. July 22, 2009) ("In deciding whether to approve a class action settlement, the 'ultimate issue' for the Court is whether the proposed settlement 'is fair, adequate and reasonable.'"). In other words, "[i]t is neither required nor is it possible for a district court to determine that the proposed settlement is the fairest possible resolution of the

claims of every individual class member; rather, the court need only determine whether the settlement taken as a whole, is fair, adequate and reasonable." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008).

Courts in the Sixth Circuit have found the following factors relevant in determining whether a settlement should be approved:

(1) the likelihood of success on the merits;

(2) the risk of fraud or collusion;

(3) the complexity, expense and likely duration of the litigation;

(4) the amount of discovery engaged in by the parties;

(5) the opinions of class counsel and class representatives;

(6) the reaction of the absent class members[3]; and

(7) the public interest.

*Leonhardt*, 581 F. Supp. 2d at 832 (quoting *UAW v. General Motors*, 497 F.3d at 631, citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams*, 720 F.2d at 922-923). *See also Bobbitt*, 2009 WL 2168833, at *2 (listing substantially similar set of factors, citing *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *Rankin v. Rots*, No. 02-CV-71045, 2006 WL 1876538, at *9-10 (E.D. Mich. June 27, 2006) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d at 1205, *Williams*, 720 F.2d at 922-23, *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501-02 (E.D. Mich. 2000), *Steiner v. Freuhauf Corp.*, 121 F.R.D. 304, 305-06 (E.D. Mich. 1988), and listing substantially similar set of factors).

---

[3] This factor is not addressed given that Notice has not yet been provided to members of the Settlement Class.

The Court's grant of Preliminary Approval will allow all members of the Settlement Class to receive notice of the proposed Settlement's terms, and of the date and time of the Final Approval hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties. *See Manual for Compl. Lit.*, §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties. *Id.* § 13.14.

### B.      This Settlement Satisfies the Criteria for Preliminary Approval.

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that the Settlement fits well within the range of reasonableness, such that Preliminary Approval is warranted.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe that the claims asserted are meritorious and that they would prevail if this matter proceeded to trial. Citizens Bank argues that Plaintiffs' claims are unfounded, denies any potential liability, and up to the point of settlement has indicated a willingness to litigate those claims vigorously.

The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with the motions to dismiss, contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review. Joint Decl. ¶ 23.

     1.     **This Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations.**

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations.  *See Williams*, 720 F.2d at 922-23 ("[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair"); *see also* 2 *Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992); *Manual For Complex Litigation (Third)* § 30.42.

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  Joint Decl. ¶ 24.  Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Id. ¶ 25.  In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with other cases involving similar claims.  Id.  As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in informal discovery with Citizens Bank.  Class Counsel's review of the materials provided enabled it to gain an understanding of the evidence related to central questions in the case, and prepared it for well-informed settlement negotiations.  Id.

Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them, as a result of their litigating similar claims in both state and federal courts across the country.  Joint Decl. ¶ 26.

2.      **The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable.**

A preliminary review of the below factors supports a determination that Settlement falls within the "range of reason" such that notice to the Settlement Class and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

(a)      **Likelihood of Success at Trial.**

Plaintiffs and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to Citizens Bank, and the risks inherent to litigation.  Joint Decl. ¶ 27.  As Judge James Lawrence King of the MDL court recognized in granting final approval to the settlement with Bank of America:  "The combined risks here were real and potentially catastrophic . . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).  Judge King's acknowledgment of these risks should hold great weight given his intimate familiarity with defendant banks' defenses as a result of his presiding over the MDL for the past three (3) years.

Plaintiffs faced the risk of losing on the motions to dismiss, at summary judgment, at trial, or on appeal based on various theories advanced by Citizens Bank.  Joint Decl. ¶ 28.  The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial, as they did in the overdraft fee class action *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010) ("*Gutierrez I*"), in which Wells Fargo's similar high-to-low reordering practice resulted in a $203 million verdict against the Bank.  Joint Decl. ¶ 28.

Though the *Gutierrez I* plaintiffs were successful at trial, the Ninth Circuit Court of Appeal's recent decision in *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012) ("*Gutierrez II*"), vacated and remanded the judgment against Wells Fargo on the grounds that certain provisions of California's Unfair Competition Law are preempted by federal laws and regulations. Joint Decl. ¶ 29. Specifically, the Ninth Circuit found that whether a bank could order transactions high-to-low was exclusively governed by the National Bank Act of 1864, 13 Stat. 99 (codified at 12 U.S.C. § 1, *et seq.*) and its implementing regulations. *Gutierrez II*, 704 F.3d at 724-25. On remand, the lower court reinstated the original judgment in full in accordance with the Ninth Circuit's direction that claims premised on Wells Fargo's specific misrepresentations regarding its posting order are not preempted. *Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2013 WL 2048030, at *2 (N.D. Cal. May 14, 2013) ("*Gutierrez III*").

Thus, had this Settlement not been reached, Citizens Bank would have undoubtedly used the Ninth Circuit's ruling to argue that Plaintiffs were required to prove similar misrepresentations to those found in *Gutierrez* in order to prevail on the claims asserted, which would have delayed and endangered Settlement Class Members' monetary recovery. Joint Decl. ¶ 30. While it is Class Counsel's position that *Gutierrez* is not applicable to this case because its preemption analysis was limited to particular provisions of California's Unfair Competition Law and because it involved federal preemption, there can be no doubt that the exemption issue involves complex issues of law and fact, and presented a serious and ongoing risk to Plaintiffs' and the Settlement Class' claims against Citizens Bank. Id. ¶ 31.

Another major risk derives from the fact that the language in Citizens Bank's Account agreements suggests that, to some extent, Citizens Bank adequately disclosed its practice of Debit Re-sequencing. Joint Decl. ¶ 32. Thus, Citizens Bank asserted as a defense that its

disclosure was adequate and that it could not be held liable for Plaintiffs' decisions to maintain Citizens Bank checking Accounts under a contract authorizing such practices.  Id.  Citizens Bank asserted other defenses as well.

Each of these risks, by itself, could easily have impeded Plaintiffs' and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal.  Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with Citizens Bank outweighs the gamble of continued litigation.  Joint Decl. ¶ 33.

Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal.  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D 508, 523 (E.D. Mich. 2003) ("[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."); *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members without further delay.  Joint Decl. ¶ 34.

**(b)      Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair.**

The Settlement reached here is squarely within the range of possible approval.  As discussed above, the Settlement is the product of arm's-length negotiations conducted by the Parties' experienced counsel.  As a result of these negotiations, the Parties have reached a Settlement that Class Counsel believe to be fair, reasonable, and in the Settlement Class' best interests.  Class Counsel's assessment in this regard is entitled to considerable deference.  *See UAW v. General Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) ("[T]he Court must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'") (citation omitted).

Courts have determined that settlements may be reasonable even where Plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323. Thus, it is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, *taken as a whole*, must be fair, adequate and reasonable. *Shy v. Navistar Intern. Corp.*, No. C-3-92-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (emphasis in original).

Plaintiffs' $2,000,000.00 recovery is outstanding, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement: reinstatement of the motions to dismiss; motions for summary judgment; trial; and appeals after a Plaintiffs' verdict. Based on Citizens Bank's data, Settlement Class Counsel estimate that the Settlement Class' most likely recoverable damages at trial would have been approximately $7,000,000.00. Joint Decl. ¶ 35. Thus, under the Settlement, Plaintiffs and the Settlement Class are recovering approximately thirty percent (30%) of their most probable damages, without further risks attendant to litigation. Id. That is a significant achievement considering the obstacles that Plaintiffs faced in the litigation. Further, the percent recovery is even better when one considers that the Bank is paying the costs associated with class Notice and Settlement administration. Id.

There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement. Joint Decl. ¶ 36.

25

**(c)** **Complexity, Expense and Duration of Litigation.**

"In evaluating a proposed class settlement, the court also must weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the class in the proposed settlement." *In re Delphi Corp. Sec. Derivative, and ERISA Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual members of the Settlement Class, could be impracticable. Joint Decl. ¶ 37. The claims and defenses in this Action are complex, as is clear by Class Counsel's efforts in other bank overdraft fee cases that have been hard fought for years. Id. There is no doubt that continued litigation here would be difficult, expensive, and time consuming. Id. The risks and obstacles in this case are just as great as those in other bank overdraft fee cases and this case would likely have taken years as well to successfully prosecute. Id. Recovery by any means other than settlement would require additional years of litigation in this Court and the Sixth Circuit Court of Appeals. Id.; *see In re Delphi Corp. Sec. Derivative, and ERISA Litig.*, 248 F.R.D. at 497 ("Courts have consistently held that the expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of a settlement."). "For class actions in particular, courts view settlement favorable because it 'avoids the costs, delays and multitudes of other problems associated with them.'" *Id.* (citing *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). *See also United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.   Joint Decl. ¶ 38.   Experts in the fields of marketing and banking may also be necessary.  Id.  These considerations, and the other considerations noted above, militate heavily in favor of the Settlement.  Id.  *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

The Settlement provides immediate and substantial benefits to over then thousand Citizens Bank customers.  Joint Decl. ¶ 39.  The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner. Id.

### (d)       Stage of the Proceedings.

 "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced."  *UAW v. General Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006).  Accordingly, "[c]ounsel's reliance upon informal discovery does not preclude approval of the proposed Settlement."  *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000); *Olden v. LaFarge Corp.*, 427 F. Supp. 2d 922, 932 (E.D. Mich. 2007); *In re Johnson & Johnson Derivative Litig.*, Nos. 10-2033 (FLW), 11-4992 (FLW), 11-2511 (FLW), 2012 WL 5292963, at *14 (D.N.J. Oct. 26, 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties.").  *See also Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("The

law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.").

Plaintiffs settled the Action with the benefit of an analysis of key documentation and data regarding Citizens Bank's Overdraft Fee revenue on Debit Card Transactions, as well as detailed information regarding its posting order over a several year period.  Joint Decl. ¶ 40.  As noted above, the review of this information and data positioned Settlement Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial.  Id.

The record provides sufficient information for this Court to determine that the Settlement is fair.  Further, there is no reason to doubt the Settlement's fairness.  A proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable.  *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-cv-11814, 2004 WL 1087261, at *1 (S.D.N.Y. May 14, 2004).

### (e)      Class Counsel are Experienced in Similar Litigation

As the Sixth Circuit observed, "[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."  *In re Cardizem DC Antitrust Litig.*, 218 F.R.D. at 525.  Accordingly, in determining whether to approve a proposed settlement, recommendations of experienced counsel are entitled to "substantial weight."  *Smith v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *6 (N.D. Ohio Nov. 7, 2007); *In re American Family Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant weight" should be given "to the belief of experienced counsel that settlement is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations.") (internal quotation marks omitted).

As stated previously, Class Counsel have significant experience litigating the Overdraft

Fee claims at issue in this Action through their active roles in *In re Checking Account Overdraft Fee Litigation*, MDL 2036, and similar overdraft fee class actions throughout the country.  Joint Decl. ¶ 41.   In litigating these cases, Class Counsel have not merely been overseeing the litigation, but rather have been at the forefront of the litigation, having served as lead and co-lead counsel and personally drafted discovery requests, taken depositions, extensively reviewed documents, argued and briefed motions to dismiss, prepared motions for class certification, partaken in other motion practice, settled numerous overdraft class actions, and argued preliminary approval and final approval motions.   Id.   In addition, Class Counsel, with the assistance of experts, have extensively analyzed multiple sets of data from various banks targeted at determining the damages incurred by the certified and putative classes.  Id. ¶ 42.  The data analysis has enabled Settlement Class Counsel to gain an understanding of the evidence related to central questions in the overdraft class actions and has prepared Settlement Class Counsel for well-informed settlement negotiations. Id.   In fact, Class Counsel's substantial knowledge and experience litigating overdraft fee class actions and analyzing overdraft fee damage data have enabled them to collectively settle over twenty (20) similar cases.  Id.  With Class Counsel's experience handling and litigating overdraft fee class actions comes extensive knowledge of the claims, defenses, and applicable law governing Plaintiffs' claims.

Class Counsel possess extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they have represented.  Joint Decl. ¶ 43.  The experience, resources and knowledge Class Counsel bring to this Action is extensive and formidable.  Id.  Needless to say, Class Counsel is qualified to represent the Settlement Class and will, along with the class representatives, vigorously protect the interests of the Settlement Class.  Id.; *see UAW*, 2007 WL 891151, at *19 ("Here, counsel for all parties are reputable practitioners and trial counsel

experienced in complex class action litigation. Under the law, their collective judgment in favor of the Settlement is entitled to considerable weight.").

**(f)**      <u>**The Settlement is Consistent With the Public Interest**</u>

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d at 1205 (6th Cir. 1992)). *See also Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at * 6 (W.D. Ky. Nov. 20, 2008) ("Lastly, the Court notes that there is a federal policy favoring settlement of class actions . . . and the Court can find no principled basis for not adhering to that policy in this matter.").  Plaintiffs aver that there is no countervailing public interest present in this litigation which would militate against the strong public interest in the settlement of this complex action.

**C.**      <u>**Certification of the Settlement Class is Appropriate.**</u>

For settlement purposes, Plaintiffs respectfully requests that the Court certify the Settlement Class defined above, and in paragraph 41 of the Agreement.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue to the class to inform the Settlement Class of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval hearing.  *See Manual for Compl. Lit.*, §§ 21.632, 21.633.  For purposes of this Settlement only, Citizens Bank does not oppose class certification. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

30

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).   Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

The numerosity requirement of Rule 23(a) is satisfied for settlement purposes because the Settlement Class is currently estimated to consist of more than ten thousand Citizens Bank customers, and joinder of all such persons is impracticable.  Joint Decl. ¶ 45.  *See* Fed. R. Civ. P. 23(a)(1); *Witmer v. Acument Global Techs., Inc.*, No. 08-12795, 2009 WL 174916, at *3 (E.D. Mich. Jan. 26, 2009) (holding that numerosity "is not determined according to a strict numerical test" and certifying class with 64 members); *French v. Essentially Yours Indus.*, No. 07-CV-817, 2008 WL 2788511, at *3 (W.D. Mich. July 16, 2008) ("While not an absolute rule, it is generally accepted that a call of 40 or more members is sufficient to establish numerosity.").  In addition to the number of proposed members, "courts commonly consider such factors as the ability of the members to bring individual law suits and whether class certification would promote judicial economy."  *Witmer*, 2009 WL 174916 at *3.  *See also* 1 *Newberg on Class Actions* § 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is

capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  The Sixth Circuit has held that commonality may be satisfied by "a single issue common to all members of the class."  *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996).  Here, the commonality requirement is satisfied for settlement purposes.  There are multiple questions of law and fact – centering on Citizens Bank's systematic practice of Debit Re-sequencing – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent members of the Settlement Class, such that the Rule 23(a)(3) typicality requirement is satisfied for settlement purposes.  *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("A claim is typical if 'it arises from the same event of practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  The typicality requirement "is not onerous."  *Int'l Union v. Ford Motor Co*., Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006).  Plaintiffs are typical of absent members of the Settlement Class because they were subjected to the same Citizens Bank practices and claim to have suffered from the same injuries, and because they will benefit equally from the relief provided by the Settlement.

Plaintiffs and Class Counsel for settlement purposes satisfy the adequacy of representation requirement of Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent."  *Amchem Products, Inc.*, 521 U.S. at

594.   Thus, the Court must measure the adequacy of representation by the following two standards: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976); *Beattie*, 511 F.3d at 562-63 (The Court "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another.") (internal quotation omitted).   Both these standards are satisfied.   Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent members of the Settlement Class have the same interest in the relief afforded by the Settlement, and the absent members of Settlement Class have no diverging interests.   Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.   Joint Decl. ¶ 48.   Class Counsel have devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class.   Id.

Certification of the Settlement Class is further appropriate for settlement purposes because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the Action.   *See* Fed. R. Civ. P. 23(b)(3).   "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc.*, 521 U.S. at 620.   Rule 23(b)(3) is designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded, where a class action will "achieve economies of time, effort, and expense, and

promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results." *Id.* at 614-15.  It requires the Court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (citing Fed. R. Civ. P. 23(b)(3)).  Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each Settlement Class Member.  Joint Decl. ¶ 49.  For example, each Settlement Class Member's relationship with Citizens Bank arises from an Account agreement that is the same or substantially similar in all relevant respects to other Settlement Class members' Account agreements.  Id.; *See Jiminez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 WL 3623176, at *5 (E.D. Mich. Sept. 15. 2010) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action.") (citing *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004); *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

Further, resolution of more than ten thousand claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  For these reasons, the Court should certify the Settlement Class.

> **D.      The Court Should Approve the Proposed Notice Program Because it is Constitutionally Sound.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise

regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts.  Those who cannot be readily identified must be given the best notice practicable under the circumstances." *Manual for Compl. Litig.*, § 21.311.  "To satisfy this standard, the notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." *In re Cendant*, 109 F. Supp. 2d at 254; *see also Manual for Compl. Litig.*, § 21.312 (listing relevant information).  The method used should be "reasonably calculated to provide notice to the identifiable absent class members." *In re Cherry's Petition to Intervene*, 164 F.R.D. 630, 637 (E.D. Mich. 1996).

The proposed Notice Program satisfies all of these criteria.  As recited in the Settlement, the Notice will properly inform members of the Settlement Class of the substantive terms of the Settlement.  It will advise members of the Settlement Class of their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement.  The Notice Program is designed to reach a high percentage of the Settlement Class and satisfies the requirements of constitutional due process.  Joint Decl. ¶ 20.  Therefore, the Court should approve the Notice Program and the form and content of the Notices attached hereto as Exhibits C, D and E.

### E.        The Court Should Schedule a Final Approval Hearing.

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.   Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of Final Approval.   The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order and Final Judgment under Rule 23(e); whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses; and whether to approve the request for Service Awards to the Plaintiffs.   Plaintiffs request that the Court schedule the Final Approval Hearing no sooner than the week of November 25, 2013 (if convenient for the Court).   Plaintiffs and Class Counsel will file their motion for Final Approval, Fee Application and request for Service Awards for Plaintiffs no later than forty-five (45) days prior to the Final Approval Hearing.

### IV.      CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint Jane Simpson and Shirley D. Liddell as class representatives; (4) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices attached hereto as Exhibits C, D and E; (5) approve and order the opt-out and objection procedures set forth in the Agreement; (6) stay the Action against Citizens Bank pending Final Approval of the Settlement; (7) appoint as Class Counsel and Settlement Class Counsel the law firms listed in paragraphs 14 and 42 of the Agreement, respectively; and (8) schedule a Final Approval Hearing to occur no sooner than the week of November 25, 2013 (if convenient for the Court).

For the Court's convenience, Plaintiffs attach as Exhibit F a proposed Order Preliminarily Approving Class Settlement and Certifying Settlement Class.

Dated: July 15, 2013.

Respectfully submitted,

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow
Jason H. Alperstein
KOPELOWITZ OSTROW P.A.
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

/s/ Hassan A. Zavareei
Hassan A. Zavareei
Jeffrey D. Kaliel
TYCKO & ZAVAREEI
2000 L. Street, N.W., Suite 808
Washington, D.C. 20036
hzavareei@tzlegal.com

/s/ E. Powell Miller
E. Powell Miller (P39487)
Ann L. Miller (P43578)
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Ste. 300
Rochester, MI 48307
epm@millerlawpc.com

/s/ Robert Gittleman
Robert Gittleman (P14205)
ROBERT GITTLEMAN LAW FIRM, P.L.C.
31731 Northwestern Highway
Suite 101E
Farmington Hills, MI 48334
r.gittleman@yahoo.com

/s/ Patrick E. Cafferty
Patrick E. Cafferty
CAFFERTY FAUCHER LLP
101 North Main Street, Suite 565
Ann Arbor, MI 48104
pcafferty@caffertyfaucher.com

/s/ Kenneth J. Grunfeld
Kenneth J. Grunfeld
Ruben Honik
Richard M. Golomb
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
kgrunfeld@golombhonik.com

/s/ Allen Carney
Allen Carney
Randall K. Pulliam
CARNEY WILLIAMS BATES
PULLIAM & BOWMAN, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
rpulliam@carneywilliams.com

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey M. Ostrow, Esq., counsel for the Plaintiffs and the Proposed Class, hereby certifies that on this 15th day of July, 2013, a true and correct copy of the foregoing was filed and served via CM/ECF on all counsel of record.

**KOPELOWITZ OSTROW P.A.**


*/s/ Jeffrey M. Ostrow*
**JEFFREY M. OSTROW, ESQ.**

38