## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **JANE SIMPSON, on Behalf of Herself and All Others Similarly Situated,** | |
| **Plaintiff,** | Case No. 2:12-cv-10267-DPH-RSW |
| **v.** | Hon. Denise Page Hood |
| **CITIZENS BANK,** | Magistrate Judge R. Steven Whalen |
| **Defendant.** | |
| **SHIRLEY D. LIDDELL, on Behalf of Herself and All Others Similarly Situated,** | |
| **Plaintiff,** | Case No. 2:12-cv-11604-DPH-RSW |
| **v.** | Hon. Denise Page Hood |
| **CITIZENS BANK and CITIZENS REPUBLIC BANCORP, INC.** | Magistrate Judge R. Steven Whalen |
| **Defendants.** | |

## PLAINTIFFS' AND CLASS COUNSEL'S
## MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND APPLICATION FOR SERVICE AWARDS, ATTORNEYS' FEES AND EXPENSES AND INCORPORATED MEMORANDUM OF LAW

Jeffrey M. Ostrow
Jason H. Alperstein
KOPELOWITZ OSTROW P.A.
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

*Settlement Class Counsel for Plaintiffs*

Hassan A. Zavareei
Jeffrey D. Kaliel
TYCKO & ZAVAREEI
2000 L. Street, N.W., Suite 808
Washington, D.C. 20036
hzavareei@tzlegal.com

*Settlement Class Counsel for Plaintiffs*

E. Powell Miller (P39487)
Ann L. Miller (P43578)
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Ste. 300
Rochester, MI 48307
epm@millerlawpc.com

*Settlement Class Counsel for Plaintiffs*

Robert Gittleman (P14205)
ROBERT GITTLEMAN LAW FIRM, P.L.C.
31731 Northwestern Highway
Suite 101E
Farmington Hills, MI 48334
r.gittleman@yahoo.com

*Class Counsel for Plaintiffs*

Patrick E. Cafferty
CAFFERTY FAUCHER LLP
101 North Main Street, Suite 565
Ann Arbor, MI 48104
pcafferty@caffertyfaucher.com

*Class Counsel for Plaintiffs*

Allen Carney
Randall K. Pulliam
CARNEY WILLIAMS BATES
PULLIAM & BOWMAN, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
rpulliam@carneywilliams.com

*Class Counsel for Plaintiffs*

Ruben Honik
Richard M. Golomb
Kenneth J. Grunfeld
GOLOMB & HONIK, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
kgrunfeld@golombhonik.com

*Class Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION............................ ...................................................2

II.    MOTION FOR FINAL APPROVAL ............................................... 5

      A.    Background and Settlement of the Action ........................................... 5

      B.    Summary of the Settlement Terms ..................................................... 8

            1.    The Settlement Class.................................................................. 8

            2.    Relief for the Benefit of the Settlement Class ........................... 8

            3.    Settlement Class Member Payment Distributions ..................... 9

            4.    Class Release ....................................................................... 10

            5.    The Notice Program ............................................................. 10

            6.    Settlement Termination......................................................... 10

            7.    Class Representatives' Service Awards ................................. 11

            8.    Attorneys' Fees and Costs .................................................... 11

III.   ARGUMENT ............................................................................. 11

      A.    The Legal Standard for Final Approval ........................................... 11

      B.    This Settlement Satisfies the Criteria for Final Approval.................. 13

            1.    Likelihood of Success at Trial ..............................................13

            2.    The Risk of Fraud or Collusion ............................................ 16

            3.    Complexity, Expense and Duration of Litigation .................... 17

            4.    The Amount of Discovery Engaged in By the Parties............. 19

            5.    The Opinions of Class Counsel and Class Representatives.................... 21

            6.    The Reaction of Absent Settlement Class Members.............................. 22

            7.    The Settlement is Consistent with the Public Interest ............................ 22

      C.    The Notice to the Class Satisfied Rule 23 and Due Process............................ 23

      D.    Plan of Allocation ........................................................................ 24

      E.    Certification of the Settlement Class is Appropriate ......................... 25

IV.   APPLICATION FOR SERVICE AWARDS ................................. 29

V.    APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES................................................................................. 30

      A.    The Standard for Approval of Attorneys' Fees.................................. 31

B.     The Percentage Method – The Percentage Fee Class Counsel Seek is Consistent with and within the Range of Fee Percentages Awarded in Similar Actions ...................................................................................... 32

C.     An Analysis of the *Bowling* Factors Demonstrates that the Requested Fee is Reasonable ........................................................................................ 34

      1.    The Value of the Benefit Rendered to the Class ...................................... 35

      2.    The Value of the Services on an Hourly Basis ...................................... 35

          a.    The Lodestar Analysis Supports the Reasonableness of the Requested Attorneys Fees ....................................... 35

          b.    The Labor Dedicted Supports the Reasonableness of the Requested Attorneys' Fees ......................................... 36

      3.    Whether the Services Were Undertaken on a Contingent Fee Basis…………………………................................................. 38

      4.    Society's Stake in Rewarding Attorenys Who Produce Such Benefits to Order to Maintain an Incentive to Others............................. 39

      5.    The Complexity of the Litigation ........................................................ 40

      6.    The Professional Skill and Standing of Counsel Involved on Both Sides…................................................................................. 42

D.     The Expense Request is Reasonable.................................................. 43

IV.    **CONCLUSION** ......................................................................... 44

## <u>CONTROLLING OR MOST RELEVANT AUTHORITIES</u>

### <u>Cases</u>

*Bowling v. Pfizer, Inc.*,
     102 F.3d 777 (6th Cir. 1997)

*In re Cardizem CD Antitrust Litigation*,
     218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec. Derivative, and ERISA Litig.*,
     248 F.R.D. 483 (E.D. Mich. 2008).

*In re Rio Hair Naturalizer Prods. Liab. Litig.*,
     No. MDL 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)

*Int'l Union, UAW v. General Motors Corp.*,
     497 F.3d 615 (6th Cir. 2007)

*Leonhardt v. ArvinMeritor, Inc.*,
     581 F. Supp. 2d 818 (E.D. Mich. 2008)

*Williams v. Vukovich*,
     720 F.2d 909 (6th Cir. 1983)

### <u>Court Rules</u>

Fed. R. Civ. P. 23(a)

Fed. R. Civ. P. 23(b)(3)

Fed. R. Civ. P. 23(e)

## STATEMENT OF ISSUES PRESENTED

1.     Whether the Court should find that the Settlement is fair, reasonable, and adequate, and therefore grant it final approval?

Class Counsel's answer: Yes.

2.     Whether the Court should find that the Notice Program as carried out by Class Counsel and the Settlement Administrator meets the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure?

Class Counsel's answer: Yes.

3.     Whether the Court should find that the Plan of Allocation treats Plaintiffs and the Settlement Class fairly and adequately, and therefore grant it final approval?

Class Counsel's answer: Yes.

4.     Whether the Court should find that final certification of the Settlement Class is appropriate and warranted?

Class Counsel's answer: Yes.

5.     Whether the Court should find that the attorneys' fees sought by Class Counsel are fair and reasonable?

Class Counsel's answer: Yes.

6.     Whether Class Counsel is entitled to be reimbursed for their reasonable litigation expenses?

Class Counsel's answer: Yes.

7.     Whether the Court should grant Class Counsel's request to award service awards for Plaintiffs, Jane Simpson and Shirley D. Liddell?

Class Counsel's answer: Yes.

Plaintiffs, Jane Simpson and Shirley D. Liddell (collectively "Plaintiffs"), respectfully move for Final Approval of the Settlement Agreement and Release ("Settlement" or "Agreement"), attached as ***Exhibit A***, which will resolve all claims against Citizens Bank and Citizens Republic Bancorp, Inc. (collectively "Citizens Bank" or the "Bank")[1] in the above-captioned consolidated cases styled *Simpson v. Citizens Bank*, Case No. 2:12-cv-10267-DPH-RSW ("*Simpson*") and *Liddell v. Citizens Bank and Citizens Republic Bancorp, Inc.*, Case No. 2:12-cv-11604-DPH-RSW ("*Liddell*") (collectively "Action").[2]   The Court should grant Final Approval because the Settlement provides substantial relief for the class of Citizens Bank Account holders defined in paragraph 41 of the Agreement ("Settlement Class"), and the terms of the Settlement are well within the range of reasonableness and consistent with applicable case law.  Indeed, given the significant risks inherent in this Action, the Settlement – which includes Citizens Bank's agreement to pay Two Million Dollars ($2,000,000.00) in cash plus Two Hundred Thousand Dollars ($200,000.00) in fees and costs associated with class Notice and Settlement administration – is an excellent result for the Settlement Class.

Plaintiffs and Class Counsel now seek Final Approval of the Settlement.  Based on the controlling Sixth Circuit legal standards and supporting facts, Final Approval is clearly warranted.  In addition, Class Counsel respectfully request that the Court award Service Awards to the named Plaintiffs, whose willingness to represent the Settlement Class and participation in the Action helped make the Settlement possible.  Finally, Class Counsel respectfully request that the Court award attorneys' fees equal to thirty-three percent (33%) of the Settlement Fund and

---

[1] After this settlement was reached, FirstMerit Bank, N.A., became the successor by merger as of April 13, 2013 to Citizens Bank.

[2] All capitalized terms used throughout this Motion have the same meanings as those found in Section II of the Settlement Agreement.

reimbursement of certain litigation related expenses, to compensate Class Counsel for their work in bringing this case on behalf of the Settlement Class and achieving the Settlement.

## I.   <u>INTRODUCTION</u>

This case is centered on Citizens Bank's assessment of Overdraft Fees incurred as a result of the Bank's practice of Debit Re-sequencing.  Plaintiffs maintained a checking account with Citizens Bank and regularly used their Citizens Bank Debit Cards to make purchases as well as to withdraw funds at ATMs.  Plaintiffs allege that the Bank's practice of Debit Re-sequencing results in more Overdraft Fees being assessed against Account holders than would otherwise occur if Citizens Bank had processed Debit Card Transactions chronologically.  Plaintiffs also allege that Debit Re-sequencing supports actionable common law and statutory claims.

There have been over eighty similar cases filed throughout the country against numerous banks which challenge the high-to-low Debit Card reordering practice.  The vast majority of those cases have been consolidated and transferred by the Judicial Panel on Multidistrict Litigation to the United States District Court for the Southern District of Florida and are currently being presided over by Judge James Lawrence King in *In Re Checking Account Overdraft Fee Litigation*, MDL 2036 ("MDL").  Many of those cases have already settled and received either preliminary and/or final approval, while others have not yet reached a similar posture.  The remaining non-MDL cases were filed and remain in various state courts because there was no federal subject matter jurisdiction, or filed in other district courts (such as this case) when Judge King stopped accepting newly filed cases.  Many of the firms that make up Class Counsel are counsel of record for plaintiffs in many of the other cases and have played a significant role in  the MDL actions.

In January 2012, Plaintiffs sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of Citizens Bank's practice of re-sequencing Debit Card

Transactions from highest to lowest dollar amount. Plaintiffs alleged that Citizens Bank systemically engaged in Debit Re-sequencing to maximize the Bank's Overdraft Fee revenue. According to Plaintiffs, Citizens Bank's practices violated the Bank's contractual and good faith duties to the Settlement Class, were substantively and procedurally unconscionable, violated the Electronic Funds Transfer Act and Regulation E, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment. *See generally* Class Action Complaint (DE # 1).

The Action involved sharply opposed positions on several fundamental legal questions, including: (i) whether Citizens Bank breached its duty of good faith and fair dealing to its customers when it engaged in Debit Re-sequencing; (ii) whether the Bank's Debit Re-sequencing practice was unconscionable, constituted conversion and/or resulted in unjust enrichment; (iii) whether Plaintiffs' claims were preempted; and (iv) the appropriate methodology for establishing damages on a class-wide basis and the amount of damages to be recovered. *See* Joint Declaration of Jeffrey M. Ostrow, E. Powell Miller, and Hassan A Zavareei attached hereto as *Exhibit B* ("Joint Decl.") ¶ 3. Citizens Bank alleged that the applicable Account agreements expressly authorized Debit Re-sequencing, as well as a medley of other defenses. *See generally* Defendant's Motion to Dismiss (DE # 10). Had this Settlement not been reached, the Plaintiffs survived the Motions to Dismiss, and an Answer to the Complaint been filed, Citizens Bank would have undoubtedly raised a number of compelling affirmative defenses as has been done with all other banks facing similar litigation.

Preliminary settlement discussions began in October, 2012. Joint Decl. ¶ 10. As a result of those discussions, Class Counsel negotiated the $2,000,000 cash payment plus the Bank's agreement to pay up to $200,000 toward the costs of Notice and Settlement administration. Agreement ¶¶ 9, 48-49.

Under the Settlement, Settlement Class Members who do not opt-out of the Settlement and who incurred Positive Differential Overdraft Fees will automatically receive a *pro rata* share of the Net Settlement Fund. Agreement ¶ 78. There are no claim forms to fill out, and they will not be asked to prove that they were damaged as a result of the Bank's practice of Debit Re-sequencing. Instead, Class Counsel and their expert have used the Bank's available electronic data to determine which Citizens Bank Account holders were adversely affected by Debit Re-sequencing, and will apply a formula (detailed in paragraph 76 of the Agreement) to calculate each Settlement Class Member's *pro rata* share of the Net Settlement Fund. *See* Declaration of Arthur Olsen ¶¶ 23-28 attached hereto as ***Exhibit C*** ("Olsen Decl."); Joint Decl. ¶ 15.

The best testament to the reasonableness and fairness of the Settlement is the magnitude of the recovery. The $2,000,000 Settlement Fund alone – not including the $200,000 Citizens Bank has agreed to pay toward the cost of Notice and Settlement Administration – represents approximately thirty percent (30%) of the Settlement Class' most probable recovery if Plaintiffs prevailed at every juncture through final judgment and on appeal. Joint Decl. ¶¶ 34, 51. When adding in the $200,000, the percentage recovery is even higher. *Id.* This recovery is remarkable given the litigation risks that Plaintiffs faced, including the argument that the relevant Account agreements expressly authorized Debit Re-sequencing and that the state law claims are preempted as a matter of law. *Id.*

Therefore, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3) and (e); (3) appoint Plaintiffs, Jane Simpson and Shirley D. Liddell, as class representatives; (4) appoint as Class Counsel and Settlement Class Counsel the law firms listed in paragraphs 14 and 42 of the Agreement,

4

respectively; (5) approve Service Awards to the Plaintiffs; (6) award Class Counsel attorneys' fees and reimbursement of expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.   MOTION FOR FINAL APPROVAL

### A.   <u>Background and Settlement of the Action.</u>

On January 20, 2012, Plaintiff, Jane Simpson, filed a Class Action Complaint in the Eastern District of Michigan seeking monetary damages, restitution and declaratory relief from Citizens Bank based on its alleged unfair assessment and collection of Overdraft Fees. *See generally* Class Action Complaint (DE # 1); Joint Decl. ¶ 5. Plaintiff Simpson alleged that as a result of Citizens Bank's manipulation of the order in which customers' Debit Card Transactions were posted, customers' funds were depleted more rapidly than they should have been, and Plaintiff and Settlement Class Members paid more Overdraft Fees than they otherwise should have paid. *Id.* On March 26, 2012, Citizens Bank filed a Motion to Dismiss the *Simpson* Complaint. *Id.* ¶ 6. From the outset, Citizens Bank denied liability, argued that the claims are unfounded, highlighted language in the relevant account agreements that it contended expressly advised customers of, and permitted, the Debit Re-sequencing practice at issue, and asserted a series of compelling arguments. *See generally* Motion to Dismiss (DE # 10); Joint Decl. ¶ 6.

On January 31, 2012, Plaintiff, Shirley Liddell, filed a similar Class Action Complaint in the Circuit Court of Genesee County, Case No. 12-97556. Joint Decl. ¶ 7. Upon Citizens Bank's Motion for Summary Disposition, the case was stayed by the state court by a March 27, 2012 Order. *Id.* Thereafter, on April 9, 2012, Plaintiff Liddell filed a second case against Citizens Bank in the Eastern District of Michigan. *Id.*; (DE # 1 in Case No. 2:12-cv-11604-DPH-RSW).

On April 19, 2012, Plaintiff Simpson filed her Memorandum In Opposition to the Motion to Dismiss.  (DE # 13).  On May 2, 2012, Citizens Bank filed its Reply in support of its Motion to Dismiss.  (DE # 16).  On June 6, 2012, the Court heard oral argument on Citizens Bank's Motion to Dismiss in *Simpson*.   On June 26, 2012, Plaintiff Liddell filed a Response to Citizens Bank's Motion to Dismiss.  (DE # 28).  On June 29, 2012, Citizens Bank filed its Reply in support of its Motion to Dismiss the *Liddell* Complaint.  (DE # 30).

On July 16, 2012, upon the Parties' stipulation, the Court entered an order consolidating the *Simpson* and *Liddell* cases.  (DE # 32).  On July 28, 2012, an Order was entered by the Circuit Court of Genesee County, dismissing Liddell's state court case without prejudice.

Beginning in October 2012, and prior to engaging in protracted and expensive litigation, the Parties engaged in preliminary settlement discussions.  Joint Decl. ¶ 10.  At that time, pursuant to a Confidentiality Agreement, Citizens Bank provided Settlement Class Counsel aggregate information regarding its Overdraft Fee revenue on Debit Card Transactions, as well as detailed information regarding its posting order over a several year period.  *Id.*  Settlement Class Counsel and Plaintiffs' expert analyzed this data.  *Id.*

Over the course of the next several months, the Parties participated in ongoing arm's length and good faith settlement negotiations.  Joint Decl. ¶ 11.  After much discussion, the Parties reached an agreement on the material terms of a settlement and signed a Summary Agreement, which memorialized, subject to negotiation and execution of the Agreement and subject to Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiffs and Settlement Class Members who do not opt-out of the Settlement in exchange for Citizens Bank's agreement to pay the sum of $2,000,000 to create a common fund for the benefit of the Settlement Class, and to separately

pay up to $200,000 toward the costs of class Notice and Settlement administration as further detailed below.  *Id.*

On March 7, 2013, the Parties filed a Notice of Settlement with the Court.  (DE # 36). On March 27, 2013, as a result of the Notice of Settlement, the Court entered an Order Dismissing Motions Without Prejudice and Staying Dates, pending the submission of a settlement agreement and motion for preliminary approval of the agreement.  (DE # 37).  On April 11, 2013, after almost six (6) months of negotiations, the Parties signed the Agreement. Joint Decl. ¶ 12.

On July 15, 2013, Plaintiffs and Class Counsel filed their Unopposed Motion for Preliminary Approval and for Certification of Settlement Class.  (DE # 39).  On September 5, 2013, the Court entered an Order Preliminarily Approving Class Settlement and Certifying Settlement Class ("Preliminary Approval Order").  (DE # 42).  In entering the Preliminary Approval Order, the Court preliminary determined that the Settlement is "fair, reasonable and adequate" and found "that the Settlement was reached in the absence of collusion, and is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel."  (DE # 31 ¶ 11); Joint Decl. ¶ 13.

Pursuant to the Preliminary Approval Order, Notice of the Settlement was timely mailed to 61,477 members of the Settlement Class, representing a total of 64,268 Accounts. Declaration of Cameron Azari ¶ 16, attached hereto as ***Exhibit D*** ("Azari Decl.").  Notice of the Settlement was also timely published in nine (9) newspapers covering the major markets in which Citizens Bank operated branches during the Class Period.  Azari Decl. ¶ 22.  In addition, a special Settlement Website (www.CitizensBankoverdraftsettlement.com) and toll-free telephone number were established to provide details regarding the Settlement to inquiring members of the Settlement Class.  *Id.* ¶¶ 25, 27.

B.      **Summary of the Settlement Terms.**

The Settlement's terms are detailed in the Agreement attached as ***Exhibit A***.   The following is a summary of the material terms of the Settlement.

      1.      **The Settlement Class.**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.   The Settlement Class is defined as:

> All Citizens Bank customers in the United States who had one or more Accounts (whether held individually or jointly) and who, during the Class Period, incurred an Overdraft Fee as a result of Citizens Bank's Debit Re-sequencing.   Excluded from the Settlement Class are all current Citizens Bank employees, officers and directors, and the Judge presiding over this Action.

Agreement ¶ 41.  Class Period "means the period from January 20, 2006, through, and including, January 20, 2012."  *Id.* ¶ 15.

      2.      **Relief for the Benefit of the Settlement Class.**

On September 12, 2013, Citizens Bank timely deposited $2,000,000 into the Escrow Account.  Agreement ¶ 70; Joint Decl. ¶ 14.  That deposit created the Settlement Fund, which will be used to pay all distributions to Settlement Class Members who do not opt-out of the Settlement, as well as attorneys'' fees, costs, and expenses, and the class representatives' Service Awards sought in this case.  In addition to the $2,000,000 Settlement Fund, Citizens Bank is responsible for paying up to $200,000 toward the costs and fees associated with Notice and Settlement administration.  Agreement ¶ 49; Joint Decl. ¶ 14.

Settlement Class Members with a Positive Differential Overdraft Fee will receive a *pro rata* distribution of the Net Settlement Fund.   Agreement ¶ 78.   The Positive Differential Overdraft Fee analysis represents, among other things, which Citizens Bank Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used

a posting sequence or method for Debit Card Transactions other than ordering them from highest to lowest dollar amount, and how much in additional Overdraft Fees those Account holders paid. The Net Settlement Fund – which will be distributed *pro rata* among Settlement Class Members who do not opt-out of the Settlement Class – is equal to the Settlement Fund plus any accrued interest, and minus: (a) the amount of any Court-awarded attorneys' fees, costs and expenses to Class Counsel; (b) the amount of any Court-awarded Service Awards to the Plaintiffs; and (c) a reservation of funds for prospective costs of Settlement administration that are not Citizens Bank's responsibility pursuant to the Agreement; and (d) the amount of any costs associated with taxes and investments as to the Settlement Fund. *Id.* ¶ 79.

### 3. Settlement Class Member Payment Distributions.

Following the Effective Date, the Settlement Administrator will automatically distribute the Net Settlement Fund to all Settlement Class Members who do not opt-out of the Settlement. *Id.* ¶ 78. Payments to such Settlement Class Members who are Current Account Holders will be made by the Bank crediting such Settlement Class Members' Accounts, and notifying them of the credit. *Id.* ¶ 83. The Bank will then be entitled to reimbursement for any such credits from the Net Settlement Fund. *Id.* Past Account Holders and Current Account Holders whose Accounts cannot feasibly be credited will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator. *Id.* ¶¶ 83-84. Any uncashed or returned checks will remain in the Settlement Fund for one (1) year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments. Agreement ¶ 89.

**4.     Class Release.**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt-out of the Settlement will be deemed to have released Citizens Bank, as detailed in Section XIV of the Agreement.  Joint Decl. ¶ 17.

**5.     The Notice Program.**

The Notice Program in this Settlement (Agreement, Section VIII) was designed to provide the best notice practicable, and is tailored to take advantage of the information Citizens Bank has available about the Settlement Class.  Joint Decl. ¶ 18.  The Notice Program was reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's fee application and request for Service Awards for Plaintiffs, and members of the Settlement Class' rights to opt-out of or object to the Settlement.  Azari Decl. ¶¶ 29, 34.  The Notices and Notice Program constitutes sufficient notice to all persons entitled to notice.  *Id.* ¶ 37; Joint Decl. ¶ 18.  The Notices and Notice Program satisfies all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.  Azari Decl. ¶ 38; Joint Decl. ¶ 18.

**6.     Settlement Termination.**

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court.  Agreement ¶ 101; Joint Decl. ¶ 24.  Citizens Bank also has the right to terminate the Settlement if the number of members of the Settlement Class who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter agreement executed concurrently with the Agreement by Citizens Bank's Counsel and Settlement Class Counsel.  Agreement ¶ 102; Joint Decl. ¶ 24. The number or percentage will be confidential except to the Court, which upon request will be

provided a copy of the letter agreement for *in camera* review.  Agreement ¶ 102; Joint Decl. ¶ 24.

### 7. Class Representatives' Service Awards.

Pursuant to the Agreement, Class Counsel will request, and the Bank will not oppose, Service Awards of $5,000 for each of the named Plaintiffs.  Agreement ¶ 99; Joint Decl. ¶ 25.  If the Court approves them, the Service Awards will be paid from the Settlement Fund, and will be in addition to the Settlement Class Member Payments the Plaintiffs will be entitled to under the terms of the Settlement.  Agreement ¶ 99; Joint Decl. ¶ 25.  These awards will compensate the representatives for their time and effort in the Action and for the risks they assumed in prosecuting the Action against Citizens Bank.  Joint Decl. ¶ 25.

### 8. Attorneys' Fees and Costs.

Pursuant to the Agreement, Citizens Bank will not oppose Class Counsel's request for attorneys' fees of up to thirty-three percent (33%) of the Settlement Fund, as well as reimbursement of costs and expenses incurred in connection with the Action.  Agreement ¶ 95; Joint Decl. ¶ 26.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.  Agreement ¶ 96; Joint Decl. ¶ 26.

## III. ARGUMENT

### B. The Legal Standard for Final Approval.

It is well established that the law favors the voluntary settlement of class action litigation.  *Int'l Union, UAW v. Ford Motor Co.*, Nos. 05-743730 & 06-10331, 2006 WL 1984363, *21 (E.D. Mich. July 13, 2006); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *12 (E.D. Mich. Dec. 20, 1996) (there is a "public policy encouraging comprehensive settlement of class actions and multi-party litigation").

11

Under Federal Rule of Civil Procedure 23(e), "[a] class action shall not be dismissed or compromised without the approval of the court." *In re Rio*, 1996 WL 780512 at *11. "In determining whether final settlement approval should be given to a proposed class settlement, courts must determine whether the proposed settlement is 'fair, reasonable and adequate under the circumstances, and whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *Id.* (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)). *See also Bobbitt v. Academy of Court Reporting, Inc.*, No. 07-10742, 2009 WL 2168833, at *2 (E.D. Mich. July 22, 2009) ("In deciding whether to approve a class action settlement, the 'ultimate issue' for the Court is whether the proposed settlement 'is fair, adequate and reasonable.'"). Thus, "[i]t is neither required nor is it possible for a district court to determine that the proposed settlement is the fairest possible resolution of the claims of every individual class member; rather, the court need only determine whether the settlement taken as a whole, is fair, adequate and reasonable." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 833 (E.D. Mich. 2008).

Courts in the Sixth Circuit have found the following seven factors relevant in determining whether a settlement should be approved:

(1)     the likelihood of success on the merits;

(2)     the risk of fraud or collusion;

(3)     the complexity, expense and likely duration of the litigation;

(4)     the amount of discovery engaged in by the parties;

(5)     the opinions of class counsel and class representatives;

(6)     the reaction of the absent class members; and

(7)     the public interest.

12

*Id.* at 832 (quoting *Int'l Union, UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007), citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, at 922-923 (6th Cir. 1983)). In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594-95 (citing *Granada*, 962 F.2d at 1205-1206).

**C.**     **This Settlement Satisfies the Criteria for Final Approval.**

An analysis of the above seven factors related to the fairness, adequacy and reasonableness demonstrates that the Settlement is more than sufficient under Rule 23(e), such that Final Approval is clearly warranted.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs believe that the claims asserted are meritorious and that they would prevail if this matter proceeded to trial. Citizens Bank argues that Plaintiffs' claims are unfounded, denies any potential liability, and up to the point of settlement has indicated a willingness to litigate those claims vigorously.

The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with the motions to dismiss, contested class certification proceedings, summary judgment, and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review. Joint Decl. ¶ 27.

**1.**     **Likelihood of Success at Trial.**

In weighing the likelihood of success on the merits against the relief offered in the litigation, the "ultimate question ... is 'whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *UAW v. General*

*Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *15 (E.D. Mich. March 31, 2006) (quoting *In re Cardizem Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003)). "Although assessing this factor requires some evaluation of the merits of the dispute, the district court need not resolve the dispute and must refrain from reaching conclusions on issues which have not been fully litigated." *Leonhardt*, 581 F. Supp. 2d at 833.

Plaintiffs and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to Citizens Bank, and the risks inherent to litigation.   Joint Decl. ¶ 28.   As Judge James Lawrence King of the MDL court recognized in granting final approval to the settlement with Bank of America:  "The combined risks here were real and potentially catastrophic . . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).  Judge King's acknowledgment of these risks should be considered given his intimate familiarity with defendant banks' defenses as a result of his presiding over the MDL for the past three years.

Plaintiffs faced the risk of losing on the motions to dismiss, at summary judgment, at trial, or on appeal based on various theories advanced by Citizens Bank.  Joint Decl. ¶ 28.  The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial, as they did in the overdraft fee class action *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010) ("*Gutierrez I*"), in which Wells Fargo's similar high-to-low reordering practice resulted in a $203 million verdict against the Bank.  Joint Decl. ¶ 29.

Though the *Gutierrez I* plaintiffs were successful at trial, the Ninth Circuit Court of Appeals' recent decision in *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012)

14

("*Gutierrez II*"), vacated and remanded the judgment against Wells Fargo on the grounds that certain provisions of California's Unfair Competition Law are preempted by federal laws and regulations.  Joint Decl. ¶ 30.  Specifically, the Ninth Circuit found that whether a bank could order transactions high-to-low was exclusively governed by the National Bank Act of 1864, 13 Stat. 99 (codified at 12 U.S.C. § 1, *et seq.*) and its implementing regulations.  *Gutierrez II*, 704 F.3d at 724-25.  On remand, the lower court reinstated the original judgment in full in accordance with the Ninth Circuit's direction that claims premised on Wells Fargo's specific misrepresentations regarding its posting order are not preempted.  *Gutierrez v. Wells Fargo Bank, N.A.*, C 07-05923 WHA, 2013 WL 2048030, at *2 (N.D. Cal. May 14, 2013) ("*Gutierrez III*").

Had this Settlement not been reached, Citizens Bank would have likely used the Ninth Circuit's ruling to argue that Plaintiffs were required to prove similar misrepresentations to those found in *Gutierrez* in order to prevail on the claims asserted, which would have delayed and endangered Settlement Class Members' monetary recovery.  Joint Decl. ¶ 30.  While it is Class Counsel's position that *Gutierrez* is not applicable to this case because its preemption analysis was limited to particular provisions of California's Unfair Competition Law and because it involved federal preemption under the National Bank Act, there can be no doubt that the exemption issue involves complex issues of law and fact, and presented a serious and ongoing risk to Plaintiffs' and the Settlement Class' claims against Citizens Bank.  *Id.*

Another major risk derives from the fact that the language in Citizens Bank's Account agreements suggests that, to some extent, Citizens Bank adequately disclosed its practice of Debit Re-sequencing.  Joint Decl. ¶ 31.  Thus, Citizens Bank asserted as a defense that its disclosure was adequate and that it could not be held liable for Plaintiffs' decisions to maintain Citizens Bank checking Accounts under a contract authorizing such practices.  *Id.*  Moreover,

15

Citizens Bank argued that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing – the centerpiece of this Action and similar overdraft fee litigation – was not recognized under Michigan law.  *Id.*  Citizens Bank asserted other defenses as well.  *Id.*

Each of these risks, by itself, could easily have impeded Plaintiffs' and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal.  Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with Citizens Bank outweighs the gamble of continued litigation.  Joint Decl. ¶ 32.

Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal.  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D 508 at 523 ("[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery.").  This Settlement provides substantial relief to Settlement Class Members without further delay.  Joint Decl. ¶ 33.

Plaintiffs' $2,000,000 recovery is significant, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement.  Based on Citizens Bank's data, Settlement Class Counsel estimate that the Settlement Class' most likely recoverable damages at trial would have been approximately $7,000,000.  Joint Decl. ¶ 34.  Thus, under the Settlement, Plaintiffs and the Settlement Class are recovering approximately thirty percent (30%) of their most probable damages, without further risks attendant to litigation.  *Id.*  There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.  *Id.*

### 2.   The Risk of Fraud or Collusion.

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations.  *See Williams*, 720 F.2d at 922-23 ("[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his

proofs."); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair"); *see also* 2 *Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992); *Manual For Complex Litig.* (Third) § 30.42. The Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Joint Decl. ¶ 35. As detailed below, Class Counsel devoted many hours and expended significant resources investigating, researching, and prosecuting this action in order to achieve this result for the Class. Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them, as a result of their litigating similar claims in both state and federal courts across the country. *Id.*

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Joint Decl. ¶ 36. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with other cases involving similar claims. *Id.* Class Counsel has litigated, and negotiated settlements in, dozens of overdraft fee cases and the Settlement achieved here is within the range of settlements achieved in those other cases. *Id.* Courts have found those settlements to be free of fraud and collusion, and this Court should arrive at the same finding here. *Id.*

### 3.     Complexity, Expense and Duration of Litigation.

"In evaluating a proposed class settlement, the court also must weigh the risks, expense and delay the plaintiffs would face if they continued to prosecute the litigation through trial and appeal against the amount of recovery provided to the class in the proposed settlement." *In re Delphi Corp. Sec. Derivative, and ERISA Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). The traditional means for handling claims like those at issue here would tax the court system, require

a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual members of the Settlement Class, could be impracticable.  Joint Decl. ¶ 37.  The claims and defenses in this Action are complex, as is clear by Class Counsel's efforts in other bank overdraft fee cases that have been hard fought for years.  *Id.*  There is no doubt that continued litigation here would be difficult, expensive, and time consuming.  *Id.*  The risks and obstacles in this case are just as great as those in other bank overdraft fee cases and this case would likely have taken years as well to successfully prosecute.  *Id.*  Recovery by any means other than settlement would require additional years of litigation in this Court and the Sixth Circuit Court of Appeals.  *Id.*; *see In re Delphi*, 248 F.R.D. at 497 ("Courts have consistently held that the expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of a settlement.").  "For class actions in particular, courts view settlement favorable because it 'avoids the costs, delays and multitudes of other problems associated with them.'"  *Id.* (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).  *See also United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.  Joint Decl. ¶ 38.  Experts in the fields of marketing and banking may also be necessary.  *Id.*  These considerations, and the other considerations noted above, militate heavily in favor of the Settlement.  *Id.*  *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

18

The Settlement provides immediate and substantial benefits to over sixty thousand Citizens Bank customers.  Joint Decl. ¶ 39.  The proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  *Id.*  Thus, given the complex nature of the claims and defenses, this factor weighs in favor of final approval of the Settlement.

### 4.    The Amount of Discovery Engaged in By the Parties.

"In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced."  *UAW v. General Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006).  Accordingly, "[c]ounsel's reliance upon informal discovery does not preclude approval of the proposed Settlement."  *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556 (S.D. Ohio 2000); *Olden v. LaFarge Corp.*, 427 F. Supp. 2d 922, 932 (E.D. Mich. 2007); *In re Johnson & Johnson Derivative Litig.*, Nos. 10-2033 (FLW), 11-4992 (FLW), 11-2511 (FLW), 2012 WL 5292963, at *14 (D.N.J. Oct. 26, 2012) ("Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties.").  *See also Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations.").

As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in informal discovery with Citizens Bank.  Plaintiffs settled the Action with the benefit of an analysis of key documentation and data regarding Citizens Bank's Overdraft Fee revenue on Debit Card Transactions, as well as detailed information regarding its

posting order over a several year period.  Joint Decl. ¶ 40.  The review of this information and data positioned Settlement Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial.  *Id.*  Class Counsel's keen understanding of the evidence related to central questions in the case prepared it for well-informed settlement negotiations.  *Id.*  Accordingly, the discovery in this case was sufficient "to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement," and to permit this Court "to intelligently approve or disapprove the settlement."  *UAW v. Ford Motor*, 2008 WL 4104329 at *29.

Furthermore, Class Counsel possess extensive knowledge of the claims, defenses, and applicable law governing Plaintiffs' claims as a result of the discovery that has been conducted in similar overdraft fee class actions.  Joint Decl. ¶ 41.  Counsel have not merely been overseeing the litigation, but rather have been at the forefront of the litigation, having served as lead and co-lead counsel and personally drafted hundreds of discovery requests, taken dozens of depositions, reviewed over a million pages of documents, argued and briefed motions to dismiss, prepared motions for class certification, partaken in other motion practice, settled numerous overdraft class actions, and argued preliminary approval and final approval motions.  *Id.*  In addition, Class Counsel, with the assistance of experts, have extensively analyzed multiple sets of data from various banks targeted at determining the damages incurred by the certified and putative classes. *Id.* ¶ 42.  The data analysis has enabled Settlement Class Counsel to gain an understanding of the evidence related to central questions in the overdraft class actions and has prepared Settlement Class Counsel for well-informed settlement negotiations.  *Id.*

The record provides sufficient information for this Court to determine that the Settlement is fair.  Further, there is no reason to doubt the Settlement's fairness.  A proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable.

*See Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-cv-11814, 2004 WL 1087261, at
*1 (S.D.N.Y. May 14, 2004).

### 5.     The Opinions of Class Counsel and Class Representatives.

As the Sixth Circuit observed, "[t]he court should defer to the judgment of experienced
counsel who has competently evaluated the strength of his proofs."  *In re Cardizem DC Antitrust
Litig.*, 218 F.R.D. at 525.   Accordingly, in determining whether to approve a proposed
settlement, recommendations of experienced counsel are entitled to "substantial weight."  *Smith
v. Ajax Magnethermic Corp.*, No. 4:02CV0980, 2007 WL 3355080, at *6 (N.D. Ohio Nov. 7,
2007); *In re American Family Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000) ("Significant
weight" should be given "to the belief of experienced counsel that settlement is in the best
interest of the class, so long as the Court is satisfied that the settlement is the product of good
faith, arms-length negotiations.") (internal quotation marks omitted).

As stated previously, Class Counsel have significant experience litigating overdraft fee
claims similar to the ones at issue in this Action through their active roles in *In re Checking
Account Overdraft Fee Litigation*, MDL 2036, and similar overdraft fee class actions throughout
the country.  Joint Decl. ¶ 44.  Class Counsel possess extensive knowledge of and experience in
prosecuting class actions in courts throughout the United States, and have recovered hundreds of
millions of dollars for the classes they have represented.  *Id.*  The experience, resources and
knowledge Class Counsel bring to this Action is extensive and formidable.  *Id.*  Needless to say,
Class Counsel is qualified to represent the Settlement Class and will, along with the class
representatives, vigorously protect the interests of the Settlement Class.  *Id.*; *see UAW*, 2007 WL
891151, at *19 ("Here, counsel for all parties are reputable practitioners and trial counsel
experienced in complex class action litigation. Under the law, their collective judgment in favor
of the Settlement is entitled to considerable weight.").  Class Counsel, who are experienced in

21

other similar class action litigation, are extremely proud of the result achieved in this Settlement. The opinion of experienced counsel should be weigh heavily in favor of final approval of the Settlement.

### 6.    The Reaction of Absent Settlement Class Members.

To date, not a single Settlement Class Member has objected to the Settlement.   Joint Decl. ¶ 45.   Further, only 3 of the approximately 61,000 members of the Settlement Class, representing 2 unique accounts, have requested to be excluded.   Azari Decl. ¶ 28.   "[T]he overwhelming positive Class response to the Proposed Settlement weighs heavily in favor of approval."   *Cardizem*, 218 F.R.D. at 530 (citing *Kogan*, 193 F.R.D. at 502); *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider.").

### 7.    The Settlement is Consistent with the Public Interest.

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."   *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d at 1205 (6th Cir. 1992)). *See also Wade v. Kroger Co.*, No. 3:01CV-699-R, 2008 WL 4999171, at * 6 (W.D. Ky. Nov. 20, 2008) ("Lastly, the Court notes that there is a federal policy favoring settlement of class actions . . . and the Court can find no principled basis for not adhering to that policy in this matter.").   Plaintiffs aver that there is no countervailing public interest present in this litigation which would militate against the strong public interest in

22

the settlement of this complex action.  Joint Decl. ¶ 46.  Indeed, given the risks detailed above, this Settlement serves the public interest "by conserving the resources of the parties and the court, and by promoting the 'strong public interest in encouraging settlement of complex litigation and class action suits.'"  *UAW v. GM*, 2006 WL 891151 at \*22 (quoting *In re Cardizem*, 218 F.R.D. at 530).

**D.**     **The Notice to the Class Satisfied Rule 23 and Due Process.**

In addition to having personal jurisdiction over the Plaintiffs, who are parties to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *Fidel v. Farley*, 534 F.3d 508, 513-514 (6th Cir. 2008); *In re Rio*, 1996 WL 780512, \*21 (E.D. Mich. Dec. 20, 1996).

The Notice Program was comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all members of the Settlement Class; (2) publication notice ("Published Notice") designed to reach those members of the Settlement Class for whom Mailed Notice is not possible; (3) and a "Long Form" notice containing more detail than the Mailed Notice and Published Notice, that has been available on the Settlement website (www.CitizensBankOverdraftSettlement.com) and via U.S. mail upon request.   Agreement ¶¶ 59-65; Azari Decl. ¶¶ 12-24.

Each facet of the Notice Program was timely and properly accomplished. Azari Decl. ¶¶ 7-8, 12-24.  The Settlement Administrator received the data files that identified the names and last known addresses of the Settlement Class Members, ran the addresses through the National Change of Address Database, and mailed postcards to 61,477 members of the Settlement Class that contained the Mailed Notice.  Azari Decl. ¶¶ 12-17.  The Mailed Notice Program was timely

completed.  *Id.* ¶ 31.   The Published Notice Program was timely completed through advertisements placed in nine (9) newspapers in the top geographic markets where Citizens Bank maintained branches during the Class Period.  Azari Decl. ¶¶ 20-24. In addition, the Settlement Website, with a Long Form notice and other important filings relating to the Settlement, was established to enable members of the Settlement Class to obtain detailed information about the Action and the Settlement.  *Id.* ¶ 25. As of November 25, 2013, the Settlement Website had 71,205 hits.  *Id.* ¶ 26.  Thus, the Notice Program in this case satisfied the requirements of both Rule 23 and due process.  *See In re Cherry's Petition to Intervene*, 164 F.R.D. 630, 637 (E.D. Mich. 1996).  *See also Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1986) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.").

## E.     Plan of Allocation

"Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate."  *In re Packaged Act Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at 15 (E.D. Mich. Dec. 13, 2011) (citation omitted).  An allocation formula need only have a "reasonable, rational basis," where, as here, it is "recommended by 'experienced and competent' class counsel."  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).

As stated above, Class Counsel and their expert used Citizens Bank customer transactional and account data to determine which Citizens Bank Account holders were affected by Debit Re-sequencing.  Joint Decl. ¶ 15.  Class Counsel and their expert then applied a formula (that has been used in at least 25 other overdraft fee cases) to determine the amount that each

24

member of the Settlement Class was overcharged as a result of the high to low posting order.  *Id.*
Thereafter, each Settlement Class Member's *pro rata* share of the Net Settlement Fund was
calculated.  *Id.*  Thus, the plan of allocation fairly and adequately accounts for the value of each
Settlement Class Member's individual claim.

>    F.    **Certification of the Settlement Class is Appropriate.**

For the purpose of effectuating this Settlement, Plaintiffs respectfully request that the
Court certify the Settlement Class defined above, and in paragraph 41 of the Agreement.
"Confronted with a request for settlement-only class certification, a district court need not
inquire whether the case, if tried, would present intractable management problems . . . for the
proposal is that there be no trial."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).
For purposes of this Settlement only, Citizens Bank does not oppose class certification.  For the
reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1)
the class is so numerous that joinder of all members is impracticable, (2) there are questions of
law or fact common to the class, (3) the claims or defenses of the representative parties are
typical of the claims or defenses of the class, and (4) the representative parties will fairly and
adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3),
certification is appropriate if questions of law or fact common to the members of the class
predominate over individual issues of law or fact and if a class action is superior to other
available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P.
23(b)(3).

The numerosity requirement of Rule 23(a) is satisfied for settlement purposes because the
Settlement Class is currently estimated to consist of over 60,000 Citizens Bank customers, and
joinder of all such persons is impracticable.  Joint Decl. ¶ 66.  *See* Fed. R. Civ. P. 23(a)(1);

*Witmer v. Acument Global Techs., Inc.*, No. 08-12795, 2009 WL 174916, at \*3 (E.D. Mich. Jan. 26, 2009) (holding that numerosity "is not determined according to a strict numerical test" and certifying class with 64 members); *French v. Essentially Yours Indus.*, No. 07-CV-817, 2008 WL 2788511, at \*3 (W.D. Mich. July 16, 2008) ("While not an absolute rule, it is generally accepted that a call of 40 or more members is sufficient to establish numerosity."). In addition to the number of proposed members, "courts commonly consider such factors as the ability of the members to bring individual law suits and whether class certification would promote judicial economy." *Witmer*, 2009 WL 174916 at \*3. *See also* 1 *Newberg on Class Actions* § 3.05, at 3-25 (3d ed. 1992) (suggesting that any class consisting of more than forty members "should raise a presumption that joinder is impracticable").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted). The Sixth Circuit has held that commonality may be satisfied by "a single issue common to all members of the class." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). Here, the commonality requirement is satisfied for settlement purposes. There are multiple questions of law and fact – centering on Citizens Bank's systematic practice of Debit Re-sequencing – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent members of the Settlement Class, such that the Rule 23(a)(3) typicality requirement is satisfied

for settlement purposes. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) ("A claim is typical if 'it arises from the same event of practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). The typicality requirement "is not onerous." *Int'l Union v. Ford Motor Co*., Nos. 05-74730, 06-10331, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006). Plaintiffs are typical of absent members of the Settlement Class because they were subjected to the same Citizens Bank practices and claim to have suffered from the same injuries, and because they will benefit equally from the relief provided by the Settlement.

Plaintiffs and Class Counsel satisfy the adequacy of representation requirement of Rule 23(a)(4), which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Products, Inc.*, 521 U.S. at 594. Thus, the Court must measure the adequacy of representation by the following two standards: "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976); *Beattie*, 511 F.3d at 562-63 (The Court "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another.") (internal quotation omitted). Both these standards are satisfied. Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent members of the Settlement Class have the same interest in the relief afforded by the Settlement, and the absent members of Settlement Class have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise

prosecuting complex class actions, including consumer actions similar to the instant case.  Joint Decl. ¶ 69.  Class Counsel have devoted substantial time and resources to this Action and will vigorously protect the interests of the Settlement Class.  *Id.*

Certification of the Settlement Class is further appropriate for settlement purposes because the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the Action.  *See* Fed. R. Civ. P. 23(b)(3).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem Products, Inc.*, 521 U.S. at 620.  Rule 23(b)(3) is designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded, where a class action will "achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or brining about other undesirable results."  *Id.* at 614-15.  It requires the Court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084 (citing Fed. R. Civ. P. 23(b)(3)).  Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each Settlement Class Member.  Joint Decl. ¶ 70.  For example, each Settlement Class Member's relationship with Citizens Bank arises from an Account agreement that is the same or substantially similar in all relevant respects to other Settlement Class members' Account agreements.  Id.; *See Jiminez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 WL 3623176, at *5 (E.D. Mich. Sept. 15. 2010)

("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action.") (citing *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004).

Further, resolution of more than sixty thousand claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

## II.   APPLICATION FOR SERVICE AWARDS

Pursuant to the Settlement, Class Counsel request, and Citizens Bank does not oppose, Service Awards of $5,000 for each named Plaintiff.   Agreement ¶ 99; Joint Decl. ¶ 47.  It is routine to give service awards to class representatives because of their additional efforts in zealously prosecuting the case. *See Cardizem*, 218 F.R.D. at 535 (approving a $20,000 incentive award). *See also Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1357-58 ("The Court notes that the class representatives expended time and effort in meeting their fiduciary obligations to the Class, and deserve to be compensated for it.").

Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; and (3) participating in conferences with Class Counsel. In so doing, the Plaintiffs were integral to forming the theory of the case. Joint Decl. ¶ 48.

Plaintiffs not only devoted their time and effort to the litigation, but the end result of their efforts, and those of Class Counsel, are substantial benefits to the Settlement Class. Joint Decl. ¶ 49. The amount requested accords with incentive awards granted by courts in similar other Overdraft Fee cases throughout the country. *See e.g., Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) ($5,000); *Taulava v. Bank of Hawaii*, No. 11-1-0037-02 KTN (1st Cir.

Haw.) ($7,500); *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cr. Ct. W.Va.) ($7,500); *Harris v. Associated Bank, N.A.*, No. 1:09-MD-02036-JLK ($5,000) (S.D. Fla.); *Blahut v. Harris Bank, N.A.*, No. 1:09-MD-02036-JLK ($5,000) (S.D. Fla.); *Wolfgeher v. Commerce Bank, N.A.*, No. 1:09-MD-02036-JLK ($5,000) (S.D. Fla.); *McKinley v. Great Western Bank*, No. 1:09-MD-02036-JLK ($5,000) (S.D. Fla.).   If the Court approves them, the Service Awards of $10,000 (to be paid from the Settlement Fund) will be 0.5% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable service awards.   Joint Decl. ¶ 49; *see, e.g.*, *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).   The Service Awards will be paid from the Settlement Fund. Agreement ¶ 99.

Consequently, the Service Awards requested here are reasonable and should be approved by the Court.

## III.   APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

As more fully addressed herein below, consistent with standard class action practice and procedure in the Sixth Circuit, in other circuits, and in similar overdraft fee class actions around the country, Class Counsel respectfully request attorneys' fees of thirty-three percent (33%) of the Settlement Fund created through their efforts.   Agreement ¶ 95; Joint Decl. ¶ 50.   Class Counsel also seek reimbursement of certain out-of-pocket costs and expenses totaling $91,529.14 reasonably incurred in connection with the prosecution of this Action.   *Id.*   The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.   Agreement ¶ 96; Joint Decl. ¶ 50.   For

the reasons detailed herein, the requested fee is appropriate, fair and reasonable, and should therefore be approved by the Court.

### A.     The Standard for Approval of Attorneys' Fees.

It is well established that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Can Gemert*, 444 U.S. 472, 478 (1980).  The Sixth Circuit has ruled that "[i]t is within the district court's discretion to determine the appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before it." *Weitz & Luxenberg P.C. v. Sulzer Orthopedics, Inc.*, 398 F.3d 778, 780 (6th Cir. 2005) (internal quotiations omitted) (citations omitted).  The district court's award of attorneys' fees in common fund cases need only be "reasonable under the circumstances." *Id.*

There are two commonly accepted approaches for determining whether a requested fee is reasonable and fair: (1) the percentage-of-the-benefit method; and (2) the lodestar/multiplier method.  When evaluating the reasonableness of a fee under either method, courts apply the factors enumerated in *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996), discussed and analyzed below, to determine the reasonableness of a requested fee.  *See Sherrill v. Federal-Mogul Corp. Ret. Programs Comm.*, No. 04-72949, 2007 U.S. Dist. LEXIS 51054, at *10-11 (E.D. Mich. July 13, 2007) (applying *Bowling* factors); *Clevenger v. Dillards, Inc.*, No. C-1-02-0558, 2007 WL 764291, at *2 (S.D. Ohio Mar. 9, 2007) (same).

In *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513 (6th Cir. 1993), the Sixth Circuit has recognized the trend towards application of a percentage-of-the fund method in common fund cases.  *See also In re Cardizem*, 218 F.R.D. at 532 ("This Court's decision to apply the percentage-of-the-fund method is consistent with the majority trend.").  However, the

lodestar/multiplier approach is sometimes used as an alternative to or a cross-check of the percentage of the fee method.  If implemented, the court determines the lodestar by multiplying the number of hours spent on the case by each legal team member's current hourly rate.  Then, the court augments that figure by applying what is known as a multiplier to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved."  *Rawlings*, 9 F.3d at 516.

Here, under either method, the requested fee is reasonable and fair and should be approved.

**B.**    **The Percentage Method - The Percentage Fee Class Counsel Seek is Consistent with and within the Range of Fee Percentages Awarded in Similar Actions.**

In applying the percentage method "commonly, fee awards in common fund cases are calculated as a percentage of the fund created, typically ranging from 20 to 50 percent of the fund."  *In re Rio*, 1996 WL 780512 at *16 (citing *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. 1993).  Thus, district courts in the Sixth Circuit begin with a "benchmark percentage" ranging between 20-50%.  *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148, 150 (S.D. Ohio 1986); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 1029, 1046 (S.D. Ohio 2001 (noting that the range of reasonableness has been designated as between 20% and 50% of the common fund).

Class Counsel's request for 33% of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit.  *See Bessey v. Packerland Plainwell, Inc.*, 4:06-cv-95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (awarding one third of settlement fund as attorneys' fees and holding that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used fee wards in class actions average around one-third of the recovery") (internal question omitted); *Kogan v.*

*AIMCO Fox Chase*, 193 F.R.D. 496 (E.D. Mich. 2000) (awarding 33 1/3%); *In re Federal-Mogul Corp. Securities Litig.*, Case No. 00-40222 (E.D. Mich. 2004) (awarding 33 1/3%); *In re ARM Fin Group, Inc. Sec. Litig.*, No. 3:99CV-539-H, 2006 WL 2570339, at *4 (W.D. Ky. Aug. 31, 2006) (awarding 40%); *Worthington v. CDW Corp.*, No. C-1-030649, 2006 U.S. Dist. LEXIS 32100, at *22 (S.D. Ohio May 22, 2006) (awarding 38 1/3%).

The fee requested here is also in line with the fees awarded in other overdraft fee class actions settled and approved throughout the country:

| __Case__ | __Percentage of the Common Fund Awarded__ |
|---|---|
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee, included % of practice changes) |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33.33%** of $2.7 million |
| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33%** of $3 million |
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33%** of $9.5 million |
| *Johnson v. Community Bank, N.A.* No. 3:12-cv-01405-RDM (M.D. Pa.) | **33%** of $2.5 million |
| *Harris v. Associated Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $13 million |
| *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of value of settlement, which includes 30% of $110 million and 30% of value of practice changes |
| *Duval v. Citizens Bank Fin. Group, Inc.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $137.5 million |
| *Mosser v. TD Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $62 million |
| *Anderson v. Compass Bank* No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $11.5 million |
| *Casayuran v. PNC Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $90 million |
| *Orallo v. Bank of the West*, No. 1:09-MD-02036 JLK (S.D. Fla.) | **30%** of $18 million |
| *Wolfgeher v. Commerce Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of value of settlement, which includes 30% of $18.3 million and 30% of value of practice changes |
| *McKinley v. Great Western Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $2.2 million |
| *Eno v. M & I Marshall & Ilsley Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $4 million |

| *Larsen v. Union Bank*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **30%** of $35 million |
|---|---|
| *Tornes v. Bank of America, N.A.*, No. 1:09-MD-02036-JLK | **30%** of $410 million |
| *Case v. Bank of Oklahoma, N.A.*, No. 1:09-MD-02036-JLK | **30%** of $19 million |
| *Allen v. UMB Bank*, No. 1016-CV34791 (Cir. Ct. Mo.) | **30%** of $7.8 million |
| *Jones v. United Bank*, (Jackson, WV) | **30%** of $3.3 million |
| *Higgins v. Pinnacle Bank*, (Tenn. St. Ct.) | **30%** of $1.25 million |
| *Beason v. Liberty Bank*, (Ark. St. Ct.) | **30%** of $325k |
| *Trombley v. National City Bank*, No. 10-00232 (JDB) (D. D.C.) | **25%** of $12 million |
| *LaCour v. Whitney Bank*, No. 11-cv-1896-T-33-MAP (M.D. Fla.) | **25%** of $6.8 million |
| *Mathena v. Webster Bank, N.A.*, No. 3:10-cv-1448-SRU (D. Conn.) | **25%** of $2.8 million |

Joint Decl. ¶ 50.

## C. An Analysis of the *Bowling* Factors Demonstrates that the Requested Fee is Reasonable

Given that it has been established that a 33% attorneys' fee is consistent with and within the range of fee percentages awarded in similar litigation, the Court must determine whether the 33% attorneys' fee request here is reasonable under the circumstances.   In evaluating the reasonableness of a request fee, courts in the Sixth Circuit evaluate the following factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's take in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.  *Bowling*, 102 F.3d at 780.  As discussed below, each of these factors supports the 33% reward as a reasonable fee.

34

### 1.     The Value of the Benefit Rendered to the Class.

"[O]ne of the primary determinants of the quality of work performed is the result obtained. . . ."  *Rawlings*, 9 F.3d at 517 (citing *Lindy I*, 487 F.2d at 168); *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983) (noting that the most critical factor in determining the reasonable fee is the result achieved by counsel)).

As noted above, the Settlement establishes a common fund of $2,000,000, and Notice has been disseminated to approximately 61,000 members of the Settlement Class.  If the Court approves the Settlement, Plaintiffs and the Settlement Class will recover approximately thirty percent (30%) of their most probable damages.  Joint Decl. ¶ 51.  In light of the significant risks after *Gutierrez* and the arguments raised in the Motions to Dismiss, the $2,000,000 Settlement Fund, in addition to Citizens Bank's agreement to separately pay up to $200,000 toward the costs of Notice and Settlement administration, is an excellent result.  Accordingly, this factor weighs heavily in favor of the requested fee award.

### 2.     The Value of the Services on an Hourly Basis.

#### a.     *The Lodestar Analysis Supports the Reasonableness of the Requested Attorneys' Fees.*

The collective lodestar for Class Counsel is $557,406.50, based upon 1,279.90 hours expended, multiplied by a blended Class Counsel rate of $429.47 per hour.  *Id*. ¶ 52.  Class Counsel submit that these rates are reasonable in similar class action matters in and out of this Circuit and should be approved.  Thus, in the event the Court awards the request fee of 33% of the Settlement Fund or $660,000, this would result in a multiplier of 1.18.  *Id*.  The multiplier here is well within the range adopted by courts in the Sixth Circuit.  *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767-78 (S.D. Ohio 2007) ("Most courts agree that the typical lodestar multiplier" in a large class action "ranges from 1.3 to 4.5.").  *See also In re*

*Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio) (observing that multipliers of 2 to 5 have been awarded); *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (awarding multiplier of 3.08 and observing that "[t]his multiplier is well within the range of multipliers for similar litigations, which have ranged from 1-4 and have reached as high as 10"); *In re Cardizem*, 218 F.R.D. at 533 (E.D. Mich. 2003) (noting that a multiplier of 3.7 was reasonable under the circumstances); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (noting multipliers of 4 and 5 in other cases); *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep. 171 (observing multipliers for thirty-seven cases surveyed with common funds between $50 and $75 million ranging from a low of 1.16 to a high of 6.19).  Moreover, when evaluating the lodestar multipliers of the other overdraft fee cases throughout the country courts have consistently awarded fees resulting in lodestars with multiples ranging between 3 and 9.  Joint Decl. ¶ 52.

Given the nature, complexity, and potential duration of this Action, as detailed above, the risk of non-recovery, the value of the social benefit, and the extraordinary results in light of the obstacles, the multiplier is appropriate and reasonable.

> **b.** **The Labor Dedicated Supports the Reasonableness of the Requested Attorneys' Fees.**

Notwithstanding confirmation by the lodestar/multiplier method that the fee request is reasonable, an analysis of the hours referenced above further support the reasonableness of the fee request.  As detailed above, Class Counsel spent years developing the theories underlying the claims in the instant Action through their efforts in litigating (with both success and failure) other overdraft fee cases throughout the country.  Joint Decl. ¶ 53.  These efforts accrued to the benefit of Plaintiffs and the Settlement Class.  *Id.*

Class Counsel spent significant hours investigating the claims of several potential plaintiffs against Citizens Bank.  Joint Decl. ¶ 54.  Class Counsel interviewed a number of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers.  *Id.*  This information was essential to Class Counsel's ability to understand the nature of Citizens Bank's conduct, the language of the Account agreements at issue and potential relief and remedies.  *Id.*

Class Counsel expended considerable resources researching and developing the legal claims at issue.  Joint Decl. ¶ 55.  Class Counsel expended considerable time in fully briefing Citizens Bank's motions to dismiss, and in travelling to Detroit to argue before this Court.  *Id.*  Class Counsel also spent a massive amount of time preparing for settlement discussions, which required Class Counsel to analyze a large amount of data and work with their expert regarding Citizens Bank's Overdraft Fee revenue.  *Id.*  Prior to Settlement, Class Counsel and Plaintiffs' expert used this data to analyze the range of alleged damages at issue in this case, comparing Overdraft Fees actually charged to the Overdraft Fees that would have been charged had Citizens Bank not employed the challenged practice.  *Id.*

After the Parties executed the Summary Agreement in connection with the Settlement, Class Counsel spent an enormous amount of time negotiating the specific terms of the Settlement.  Joint Decl. ¶ 56.  In addition, Class Counsel engaged in an extensive settlement-related investigation and confirmatory discovery, to determine—among other things—an appropriate plan for allocation of the Settlement Fund.  *Id.*  That investigation required Plaintiffs' expert to analyze the relevant transactional data related to Overdraft Fees imposed upon members of the Settlement Class, and to help determine the fairest and most appropriate distribution formula in light of the data that Citizens Bank possessed and maintained.  *Id.* Moreover, Class Counsel devoted hundreds of hours to assist Citizens Bank in completing its

address database to allow for Notice to be disseminated to former Account holders.  Finally,
Class Counsel spent extensive time preparing the preliminary and final approval papers in
support of the Settlement.  *Id.*

Accordingly, this factor supports the requested fee.

### 3.        Whether the Services Were Undertaken on a Contingent Fee Basis.

In undertaking to prosecute this complex case entirely on a contingent fee basis, Class
Counsel assumed a significant risk of nonpayment or underpayment.  Joint Decl. ¶ 57.  That risk
warrants an appropriate fee.  *See e.g., Bowling v. Pfizer*, 922 F. Supp. 1261, 1282 (S.D. Ohio
1996); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233-34 (S.D.N.Y. 2005) (The
most important "Factor is the risk in pursuing the case.").  The risks are inherent in financing and
prosecuting complex litigation of this type, but Class Counsel undertook representation with the
knowledge that they would have to spend substantial time and money and face significant risks
without any assurance of being compensated for their efforts.  Joint Decl. ¶ 57.  Only the most
experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this
Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.
Apart from the risk of no recovery, the deferral of fees in such an undertaking while at the same
time advancing possibly hundreds of thousands of dollars in expenses would deter most firms.

Class Counsel frequently represent commercial and personal injury clients on a
contingent basis.  Joint Decl. ¶ 58.  In commercial cases, it is not infrequent for fees to be in the
range of 40% to 45% of the recovery.  *Id.*  Similarly, contingency fees in personal injury cases
range between 33.33% and 40.0%.  *Id.*  If there is an appeal taken, fees increase an additional
5.0% above the base agreed upon percentage.  *Id.*  Accordingly, Plaintiffs' Counsel's fee request
of 33% of the Settlement Fund is well within the range of similar private contingent fee
arrangements.

Despite Class Counsel's effort in litigating and settling this Action for over a year, Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the expenses advanced.  Joint Decl. ¶ 59.  There can be no dispute that this case entailed substantial risk of nonpayment.  The time Class Counsel spent on this case was time that could not be spent on other matters.  *Id.*  Class Counsel knows first-hand the risk of working on overdraft fee cases that resulted in little or no recovery after incurring hundreds of hours of attorney time and tens of thousands of dollars advanced in litigation expenses.  *Id.*

Accordingly, a fee of thirty-three percent of the Settlement is appropriate to compensate Class Counsel for the risks they took to secure significant benefits for the Settlement Class. *See Cardizem*, 218 F.R.D. at 533 (finding request fee award reasonable where, *inter alia*, "[c]ounsel undertook representation of the Class on a contingent fee basis, thus bearing the risk of recovery inherent in litigation, and expended millions of dollars in attorney time and expenses in their prosecution of this litigation over the past five years").

### 4. Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others.

"Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society." *Cardizem CD*, 218 F.R.D. at 534.  *See also Clevenger*, 2007 WL 764231 at *2 (noting the "public interest" in ensuring that attorneys willing to take on complex litigation are adequately paid so that they and other attorneys will continue to take on such cases).  Indeed, public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee.  As stated by the Eleventh Circuit:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . A contingency fee arrangement often justifies an increase in the award of attorney's fees.  This rule helps assure that the contingency fee arrangement endures.  If this

"bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

As noted above, Class Counsel's fee request is well within the range of awards in similar cases both in the Sixth Circuit and elsewhere. It is these types of awards that maintain an incentive for lawyers, like Class Counsel, to take on cases, wholly on contingency, prosecuting them for years, all the while never knowing whether they will in the end recoup substantial investment of dollars of time and costs invested in the case. Here, Class Counsel took on representation of this class in what were simultaneously the worthiest and riskiest of circumstances. Joint Decl. ¶ 60. Society has an interest in adequately compensating counsel who take on such risks to ensure that classes will be able to find representation.

### 5.    The Complexity of the Litigation.

The claims and defenses are complex and litigating them is both difficult and time-consuming. Joint Decl. ¶ 61. Although this Action settled after less than a year of litigation, recovery by any means other than settlement would have required additional years of litigation. *Id.* In fact, many overdraft fee class actions were litigated for years prior to reaching a settlement. *Id.* Others have already been tried or are at a posture where they are close to being tried. *Id.* Class action litigation based on overdraft fees associated with Debit Card Transactions were novel claims when Class Counsel began filing such cases over three years ago. These cases are complex, but there can be no question that Class Counsel's experience and knowledge from those cases resulted in the settlement of this Action at this early juncture. *Id.*

As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id.* at 560 (alterations in original) (quoting *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974)). *See also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler*, 822 F. Supp. at 1554 (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides generous benefits to the Class. As with the other cases that have gone or are going to trial, proceeding forward would have consumed millions of dollars of Class Counsel's time and delayed any payments to class members for several years. Joint Decl. ¶ 61. "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). "Experience proves, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict." *Id. See Sheick v. Automotive Component Carrier LLC*, No. 09-14429, 2010 WL 4136958, * 18 (E.D. Mich. Oct. 18, 2010) (finding that the potential that a full blown trial might leave plaintiffs with "absolutely nothing" was a significant factor favoring final approval). Accordingly, this factor weighs in favor of approval.

6.      **The Professional Skill and Standing of Counsel Involved on Both Sides**

Courts consider the professional skill and standing of counsel in considering fee requests. *In re Delphi Litig.*, 248 F.R.D. at 504 (citing *In re Cardizem CD Antitrist Litig.*, 200 F.R.D. 297, 311 (E.D. Mich. 2001)).

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel.  Litigation of this Action required counsel highly trained in class action law and procedure as well as the specialized issues presented here.  Joint Decl. ¶ 62.  Class Counsel possess these attributes, and their participation added immense value to the representation of this large Settlement Class.  *Id.* The record demonstrates that the Action involved a broad range of complex and novel challenges, which Class Counsel met at every juncture.  *Id.*

In addition, Class Counsel is highly experienced in this particular area of fee litigation, having litigated and settled more overdraft fee class actions than any other firms in the country. Joint Decl. ¶ 63.  Class Counsel used the extensive knowledge and experience obtained from those cases and applied it to the instant Action in order to achieve a fair and reasonable settlement, at an early juncture, for the Settlement Class Members.  *Id.*  Further, considering the potential for this Action to turn into a multi-year litigation (as has happened in several other overdraft fee class actions), Class Counsel's ability to negotiate the instant Settlement at the early stages of this litigation demonstrates their high level of skill and efficiency.  *Id.*

In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel.  *See e.g., In re Delphi*, 248 F.R.D. at 504. Throughout the litigation, Citizens has been represented by extremely capable counsel.  Joint Decl. ¶ 64.  These were worthy, highly competent adversaries.  *Id.*; *Walco Invs. v. Thenen*, 975

42

F. Supp. 1468, 1472 (S.D. Fla. 1997) ("*Walco*") (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

Accordingly, this factor weighs in favor of the requested fee award.

### D. The Expense Request is Reasonable.

Under Fed. R Civ. P. 23(h), the court may "award reasonable nontaxable costs that are authorized by law or by the parties' agreement." "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem*, 218 F.R.D. at 535.

Class Counsel request a total reimbursement of $91,529.14 for certain litigation costs and expenses. Joint Decl. ¶ 50. This sum represents actual out-of-pocket costs and expenses that Class Counsel necessarily incurred in connection with the prosecution and settlement of the Action, and consist of $75,900 in expert fees, including those of Arthur Olsen, whose analysis was necessary to determine the damages for Settlement Class Members in the Action and to properly identify Settlement Class Members and to allocate the Settlement Fund; $13,901.14 in travel-related expenses; and $1,728.00 in Court filing fees. *Id.*[3] Class Counsel does not seek reimbursement for all costs incurred. *Id.* These out-of-pocket expenses were reasonably and necessarily incurred in furtherance of the prosecution of this Action. *Id.*

---

[3] Class Counsel have limited the categories of expenses for which reimbursement is being sought to those enumerated above, and are not seeking reimbursement for thousands of dollars in other expenses that are routinely sought and recovered in common fund class actions.

## IV.     CONCLUSION

The Settlement with Citizens Bank securing immediate relief, including $2,000,000 in cash compensation and the Bank's separate payment of up to $200,000 toward the costs of Notice and Settlement Administration, constitutes an equitable result by any objective measure. The Settlement easily satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).  Further, Class Counsel's application for Service Awards for the Plaintiffs and for an award of attorneys' fees and expenses to Class Counsel is reasonable.  The fee request satisfies the guidelines of the Sixth Circuit given the result, the litigation risks, the complicated nature of the factual and legal issues, and the time, effort, and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiffs and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiffs, Jane Simpson and Shirley D. Liddell, as class representatives; (4) appoint as Class Counsel and Settlement Class Counsel the law firms listed in paragraphs 14 and 42 of the Agreement, respectively; (5) approve the requested Service Awards to the Plaintiffs; (6) award Class Counsel attorneys' fees and expenses; and (7) enter Final Judgment dismissing the Action with prejudice. A proposed Final Approval Order is attached hereto as *Exhibit E* and a proposed Final Judgment is attached hereto as *Exhibit F*.

Dated: November 26, 2013.

Respectfully submitted,

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow
Jason H. Alperstein
KOPELOWITZ OSTROW P.A.
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, FL 33301
ostrow@kolawyers.com

Settlement Class Counsel for Plaintiffs

/s/ E. Powell Miller
E. Powell Miller (P39487)
Ann L. Miller (P43578)
THE MILLER LAW FIRM, P.C.
950 W. University Dr., Ste. 300
Rochester, MI 48307
epm@millerlawpc.com

Settlement Class Counsel for Plaintiffs

/s/ Patrick E. Cafferty
Patrick E. Cafferty
CAFFERTY FAUCHER LLP
101 North Main Street, Suite 565
Ann Arbor, MI 48104
pcafferty@caffertyfaucher.com

Class Counsel for Plaintiffs

/s/ Allen Carney
Allen Carney
Randall K. Pulliam
CARNEY WILLIAMS BATES
PULLIAM & BOWMAN, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
rpulliam@carneywilliams.com

Class Counsel for Plaintiffs

/s/ Hassan A. Zavareei
Hassan A. Zavareei
Jeffrey D. Kaliel
TYCKO & ZAVAREEI
2000 L. Street, N.W., Suite 808
Washington, D.C. 20036
hzavareei@tzlegal.com

Settlement Class Counsel for Plaintiffs

/s/ Robert Gittleman
Robert Gittleman (P14205)
ROBERT GITTLEMAN LAW FIRM, P.L.C.
31731 Northwestern Highway
Suite 101E
Farmington Hills, MI 48334
r.gittleman@yahoo.com

Class Counsel for Plaintiffs

/s/ Kenneth J. Grunfeld
Kenneth J. Grunfeld
Ruben Honik
Richard M. Golomb
Golomb & Honik, P.C.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
kgrunfeld@golombhonik.com

Class Counsel for Plaintiffs

45

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey M. Ostrow, Esq., counsel for the Plaintiffs and the Proposed Class, hereby certifies that on this 26th day of November, 2013, a true and correct copy of the foregoing was filed and served via CM/ECF on all counsel of record.

**KOPELOWITZ OSTROW P.A.**

*/s/ Jeffrey M. Ostrow*
**JEFFREY M. OSTROW, ESQ.**