# EXHIBIT B

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **JANE SIMPSON, on Behalf of Herself and All Others Similarly Situated,** | |
| **Plaintiff,** | Case No. 2:12-cv-10267-DPH-RSW |
| **v.** | Hon. Denise Page Hood |
| **CITIZENS BANK,** | Magistrate Judge R. Steven Whalen |
| **Defendant.** | |
| **SHIRLEY D. LIDDELL, on Behalf of Herself and All Others Similarly Situated,** | |
| **Plaintiff,** | Case No. 2:12-cv-11604-DPH-RSW |
| **v.** | Hon. Denise Page Hood |
| **CITIZENS BANK and CITIZENS REPUBLIC BANCORP, INC.** | Magistrate Judge R. Steven Whalen |
| **Defendants.** | |

**JOINT DECLARATION OF JEFFREY M. OSTROW, E. POWELL MILLER, AND HASSAN A. ZAVAREEI IN SUPPORT OF PLAINTIFFS' AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS AND APPLICATION FOR SERVICE AWARDS, ATTORNEYS' FEES AND EXPENSES**

Jeffrey M. Ostrow, E. Powell Miller, and Hassan A. Zavareei declare as follows:

1.      We are Class Counsel under the Settlement Agreement and Release with Citizens Bank and Citizens Republic Bancorp, Inc. (collectively "Citizens Bank" or the "Bank") that was preliminary approved by this Court on September 5, 2013 (DE # 42).[1]  We submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Settlement and Certification of Settlement Class and Application for Service Awards, Attorneys Fees and

---

[1] All capitalized defined terms have the same meaning as defined in the Settlement Agreement and Release attached to Plaintiffs' and Class Counsel's Motion for Final Approval of Class Settlement and Certification of Settlement Class and Application for Service Awards, Attorneys' Fees and Expenses.

Expenses.  Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2.      After litigation and settlement negotiations, Plaintiffs, Class Counsel and Citizens Bank entered into a Settlement Agreement and Release ("Settlement" or "Agreement") under which Citizens Bank has agreed to: (i) pay $2,000,000 in cash to create a common fund for the benefit of the Settlement Class; and (ii) separately advance and pay up to $200,000 in fees and costs associated with class Notice and Settlement Administration.  Under the Settlement, Settlement Class Members will automatically receive distributions from the Net Settlement Fund in proportion to the actual harm that each of them sustained.

3.      The Action involved sharply opposed positions on several fundamental legal questions, including: (i) whether Citizens Bank breached its duty of good faith and fair dealing to its customers when it engaged in Debit Re-sequencing; (ii) whether the Bank's Debit Re-sequencing practice was unconscionable, constituted conversion and/or resulted in unjust enrichment; (iii) whether Plaintiffs' claims were preempted; and (iv) the appropriate methodology for establishing damages on a class-wide basis and the amount of damages to be recovered.  Citizens Bank alleged that the applicable Account agreements expressly authorized Debit Re-sequencing, as well as a medley of other defenses.  Had this Settlement not been reached, the Plaintiffs survived the Motions to Dismiss, and an Answer to the Complaint been filed, Citizens Bank would have undoubtedly raised a number of compelling affirmative defenses as has been done with all other banks facing similar litigation.

4.      In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Settlement Class in the form of direct cash compensation.

      **A.**     **Background of the Litigation and Procedural History.**

5.      On January 20, 2012, Plaintiff, Jane Simpson, filed a Class Action Complaint in the Eastern District of Michigan seeking monetary damages, restitution and declaratory relief from Citizens Bank based on its alleged unfair assessment and collection of Overdraft Fees. Plaintiff Simpson alleged that as a result of Citizens Bank's manipulation of the order in which customers' Debit Card Transactions were posted, customers' funds were depleted more rapidly than they should have been, and Plaintiff and Settlement Class Members paid more Overdraft Fees than they otherwise should have paid.

6.      On March 26, 2012, Citizens Bank filed a Motion to Dismiss the *Simpson* Complaint.  From the outset, Citizens Bank denied liability, argued that the claims are unfounded, highlighted language in the relevant account agreements that it contended expressly advised customers of, and permitted, the Debit Re-sequencing practice at issue, and asserted a series of compelling arguments.

7.      On January 31, 2012, Plaintiff, Shirley Liddell, filed a similar Class Action Complaint in the Circuit Court of Genesee County, Case No. 12-97556.  Upon Citizens Bank's Motion for Summary Disposition, the case was stayed by the state court by a March 27, 2012 Order.  Thereafter, on April 9, 2012, Plaintiff Liddell filed a second case against Citizens Bank in the Eastern District of Michigan.

8.      On April 19, 2012, Plaintiff Simpson filed her Memorandum In Opposition to the Motion to Dismiss.  On May 2, 2012, Citizens Bank filed its Reply in support of its Motion to Dismiss.  On June 6, 2012, the Court heard oral argument on Citizens Bank's Motion to Dismiss in *Simpson*.   On June 26, 2012, Plaintiff Liddell filed a Response to Citizens Bank's Motion to Dismiss.  On June 29, 2012, Citizens Bank filed its Reply in support of its Motion to Dismiss the *Liddell* Complaint.

9.      On July 16, 2012, upon the Parties' stipulation, the Court entered an order consolidating the *Simpson* and *Liddell* cases.  On July 28, 2012, an Order was entered by the Circuit Court of Genesee County, dismissing Liddell's state court case without prejudice.

10.     Beginning in October 2012, and prior to engaging in protracted and expensive litigation, the Parties engaged in preliminary settlement discussions.  At that time, pursuant to a Confidentiality Agreement, Citizens Bank provided Settlement Class Counsel aggregate information regarding its Overdraft Fee revenue on Debit Card Transactions, as well as detailed information regarding its posting order over a several year period.  Settlement Class Counsel and Plaintiffs' expert analyzed this data.

11.     Over the course of the next several months, the Parties participated in ongoing arm's length and good faith settlement negotiations.  After much discussion, the Parties reached an agreement on the material terms of a settlement and signed a Summary Agreement, which memorialized, subject to negotiation and execution of the Agreement and subject to Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiffs and Settlement Class Members who do not opt-out of the Settlement in exchange for Citizens Bank's agreement to pay the sum of $2,000,000 to create a common fund for the benefit of the Settlement Class, and to separately pay up to $200,000 toward the costs of class Notice and Settlement administration.

12.     On March 7, 2013, the Parties filed a Notice of Settlement with the Court.  On March 27, 2013, as a result of the Notice of Settlement, the Court entered an Order Dismissing Motions Without Prejudice and Staying Dates, pending the submission of a settlement agreement

and motion for preliminary approval of the agreement.  On April 11, 2013, after almost six (6) months of negotiations, the Parties signed the Agreement.

13.     On July 15, 2013, Plaintiffs and Class Counsel filed their Unopposed Motion for Preliminary Approval and for Certification of Settlement Class.  On September 5, 2013, the Court entered an Order Preliminarily Approving Class Settlement and Certifying Settlement Class ("Preliminary Approval Order").  In entering the Preliminary Approval Order, the Court preliminary determined that the Settlement is "fair, reasonable and adequate" and found "that the Settlement was reached in the absence of collusion, and is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel."

**B.     Settlement Recovery.**

14.     On September 12, 2013, Citizens Bank timely deposited $2,000,000 into the Escrow Account.  That deposit created the Settlement Fund, which will be used to pay all distributions to Settlement Class Members who do not opt-out of the Settlement, as well as attorneys' fees, costs, and expenses, and the class representatives' Service Awards sought in this case.  In addition to the $2,000,000 Settlement Fund, Citizens Bank is responsible for paying up to $200,000 toward the costs and fees associated with Notice and Settlement administration.

15.     Under the Settlement, Settlement Class Members who do not opt-out of the Settlement and who incurred Positive Differential Overdraft Fees will automatically receive a *pro rata* share of the Net Settlement Fund.  There are no claim forms to fill out, and they will not be asked to prove that they were damaged as a result of the Bank's practice of Debit Re-sequencing.  Instead, Class Counsel and their expert have used the Bank's available electronic data to determine which Citizens Bank Account holders were adversely affected by Debit Re-sequencing, and will apply a formula detailed in the Agreement to calculate each Settlement

Class Member's *pro rata* share of the Net Settlement Fund. The Positive Differential Overdraft Fee analysis represents, among other things, which Citizens Bank Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used a posting sequence or method for Debit Card Transactions other than ordering them from highest to lowest dollar amount, and how much in additional Overdraft Fees those Account holders paid.

16.     Following the Effective Date, the Settlement Administrator will automatically distribute the Net Settlement Fund to all Settlement Class Members who do not opt-out of the Settlement. Payments to such Settlement Class Members who are Current Account Holders will be made by the Bank crediting such Settlement Class Members' Accounts, and notifying them of the credit. The Bank will then be entitled to reimbursement for any such credits from the Net Settlement Fund. Past Account Holders and Current Account Holders whose Accounts cannot feasibly be credited will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator. Any uncashed or returned checks will remain in the Settlement Fund for one (1) year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments.

**C.     Class Release.**

17.     In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt-out of the Settlement will be deemed to have released Citizens Bank, as detailed in Section XIV of the Agreement.

**D.     Settlement Class Notice.**

18.     The Notice Program in this Settlement was designed to provide the best notice practicable, and is tailored to take advantage of the information Citizens Bank has available

about the Settlement Class.  The Notice Program was reasonably calculated under the circumstances to apprise members of the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's fee application and request for Service Awards for Plaintiffs, and members of the Settlement Class' rights to opt-out of or object to the Settlement. The Notices and Notice Program constitutes sufficient notice to all persons entitled to notice. The Notices and Notice Program satisfies all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

19.    The Notice Program was comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all members of the Settlement Class; (2) publication notice ("Published Notice") designed to reach those members of the Settlement Class for whom Mailed Notice is not possible; (3) and a "Long Form" notice containing more detail than the Mailed Notice and Published Notice, that has been available on the Settlement website (www.CitizensBankOverdraftSettlement.com) and via U.S. mail upon request.

20.    Each facet of the Notice Program was timely and properly accomplished.  The Settlement Administrator received the data files that identified the names and last known addresses of the Settlement Class Members, ran the addresses through the National Change of Address Database, and mailed postcards to 61,477 members of the Settlement Class that contained the Mailed Notice.  The Mailed Notice Program was timely completed.

21.    The Published Notice Program was timely completed through advertisements placed in nine (9) newspapers in the top geographic markets where Citizens Bank maintained branches during the Class Period.

22.    In addition, the Settlement Website, with a Long Form notice and other important filings relating to the Settlement, was established to enable members of the Settlement Class to

obtain detailed information about the Action and the Settlement.  As of November 25, 2013, the Settlement Website had 71,205 hits.

23.     Thus, the Notice Program in this case satisfied the requirements of both Rule 23 and due process.

### E.     Settlement Termination.

24.     Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court.  Citizens Bank also has the right to terminate the Settlement if the number of members of the Settlement Class who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter agreement executed concurrently with the Agreement by Citizens Bank's Counsel and Settlement Class Counsel.  The number or percentage will be confidential except to the Court, which upon request will be provided a copy of the letter agreement for *in camera* review.

### F.     Service Awards, Attorneys' Fees and Costs.

25.     Class Counsel request and Citizens Bank does not oppose Service Awards of $5,000 for each of the named Plaintiffs.  If the Court approves them, the Service Awards will be paid from the Settlement Fund, and will be in addition to the Settlement Class Member Payments the Plaintiffs will be entitled to under the terms of the Settlement.  These awards will compensate the Plaintiffs for their time and effort in the Action and for the risks they assumed in prosecuting the Action against Citizens Bank.

26.     Class Counsel also request, and Citizens Bank does not oppose, attorneys' fees of thirty-three percent (33%) of the Settlement Fund, plus reimbursement of litigation costs and expenses.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.

G.    **Considerations Supporting Settlement.**

27.    The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with the motions to dismiss, contested class certification proceedings, summary judgment, and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review.

1.    **Likelihood of Success at Trial.**

28.    Plaintiffs and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to Citizens Bank, and the risks inherent to litigation.

29.    Plaintiffs faced the risk of losing on the motions to dismiss, at summary judgment, at trial, or on appeal based on various theories advanced by Citizens Bank.  The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial, as they did in the overdraft fee class action *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010) ("*Gutierrez I*"), in which Wells Fargo's similar high-to-low reordering practice resulted in a $203 million verdict against the Bank.

30.    Though the *Gutierrez I* plaintiffs were successful at trial, the Ninth Circuit Court of Appeals' recent decision in *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012) ("*Gutierrez II*"), vacated and remanded the judgment against Wells Fargo on the grounds that certain provisions of California's Unfair Competition Law are preempted by federal laws and regulations.  Thus, had this Settlement not been reached, Citizens Bank would have likely used the Ninth Circuit's ruling to argue that Plaintiffs were required to prove similar misrepresentations to those found in *Gutierrez* in order to prevail on the claims asserted, which

9

would have delayed and endangered Settlement Class Members' monetary recovery.  While it is Class Counsel's position that *Gutierrez* is not applicable to this case because its preemption analysis was limited to particular provisions of California's Unfair Competition Law and because it involved federal preemption under the National Bank Act, there can be no doubt that the exemption issue involves complex issues of law and fact, and presented a serious and ongoing risk to Plaintiffs' and the Settlement Class' claims against Citizens Bank.

31.     Another major risk derives from the fact that the language in Citizens Bank's Account agreements suggests that, to some extent, Citizens Bank adequately disclosed its practice of Debit Re-sequencing.  Thus, Citizens Bank asserted as a defense that its disclosure was adequate and that it could not be held liable for Plaintiffs' decisions to maintain Citizens Bank checking Accounts under a contract authorizing such practices.  Moreover, Citizens Bank argued that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing – the centerpiece of this Action and similar overdraft fee litigation – was not recognized under Michigan law.  Citizens Bank asserted other defenses as well.

32.     Each of these risks, by itself, could easily have impeded Plaintiffs' and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with Citizens Bank outweighs the gamble of continued litigation.

33.     Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal.  This Settlement provides substantial relief to Settlement Class Members without further delay.

34.     Plaintiffs' $2,000,000 recovery is significant, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement.  Based on

Citizens Bank's data, Settlement Class Counsel estimate that the Settlement Class' most likely recoverable damages at trial would have been approximately $7,000,000. Thus, under the Settlement, Plaintiffs and the Settlement Class are recovering approximately thirty percent (30%) of their most probable damages, without further risks attendant to litigation. When adding in the $200,000 Citizens Bank has agreed to pay toward the cost of Notice and Settlement Administration, the percentage recovery is even higher. There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

### 2.    The Risk of Fraud or Collusion.

35.    The Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. As detailed below, Class Counsel devoted many hours and expended significant resources investigating, researching, and prosecuting this action in order to achieve this result for the Class. Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them, as a result of their litigating similar claims in both state and federal courts across the country.

36.    Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. In negotiating this Settlement in particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with other cases involving similar claims. Class Counsel has litigated, and negotiated settlements in, dozens of overdraft fee cases and the Settlement achieved here is within the range of settlements achieved in those other cases. Courts have found those

settlements to be free of fraud and collusion, and this Court should arrive at the same finding here.

### 3. Complexity, Expense and Duration of Litigation.

37.     The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and given the relatively small value of the claims of the individual members of the Settlement Class, could be impracticable.   The claims and defenses in this Action are complex, as is clear by Class Counsel's efforts in other bank overdraft fee cases that have been hard fought for years.  There is no doubt that continued litigation here would be difficult, expensive, and time consuming.  The risks and obstacles in this case are just as great as those in other bank overdraft fee cases and this case would likely have taken years as well to successfully prosecute.  Recovery by any means other than settlement would require additional years of litigation in this Court and the Sixth Circuit Court of Appeals.

38.     One of the most expensive aspects of ongoing litigation in this case involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.  Experts in the fields of marketing and banking may also be necessary. These considerations, and the other considerations noted above, militate heavily in favor of the Settlement.

39.     The Settlement provides immediate and substantial benefits to over sixty thousand Citizens Bank customers.  The proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  Thus, given the complex nature of the claims and defenses, this factor weighs in favor of final approval of the Settlement.

**4.       The Amount of Discovery Engaged in By the Parties.**

40.     Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in informal discovery with Citizens Bank.  Plaintiffs settled the Action with the benefit of an analysis of key documentation and data regarding Citizens Bank's Overdraft Fee revenue on Debit Card Transactions, as well as detailed information regarding its posting order over a several year period.  The review of this information and data positioned Settlement Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial.  Class Counsel's keen understanding of the evidence related to central questions in the case prepared it for well-informed settlement negotiations.  Accordingly, the discovery in this case was sufficient to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, and to permit this Court to intelligently approve or disapprove the settlement.

41.     Furthermore, Class Counsel possess extensive knowledge of the claims, defenses, and applicable law governing Plaintiffs' claims as a result of the discovery that has been conducted in similar overdraft fee class actions.  Counsel have not merely been overseeing the litigation, but rather have been at the forefront of the litigation, having served as lead and co-lead counsel and personally drafted hundreds of discovery requests, taken dozens of depositions, reviewed over a million pages of documents, argued and briefed motions to dismiss, prepared motions for class certification, partaken in other motion practice, settled numerous overdraft class actions, and argued preliminary approval and final approval motions.

42.     In addition, Class Counsel, with the assistance of experts, have extensively analyzed multiple sets of data from various banks targeted at determining the damages incurred by the certified and putative classes.  The data analysis has enabled Settlement Class Counsel to gain an understanding of the evidence related to central questions in the overdraft class actions

and has prepared Settlement Class Counsel for well-informed settlement negotiations.

43.    The record provides sufficient information for this Court to determine that the Settlement is fair.  Further, there is no reason to doubt the Settlement's fairness.  A proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable.

### 5.    The Opinions of Class Counsel and Class Representatives.

44.    Class Counsel have significant experience litigating overdraft fee claims similar to the ones at issue in this Action through their active roles in *In re Checking Account Overdraft Fee Litigation*, MDL 2036, and similar overdraft fee class actions throughout the country.  Class Counsel possess extensive knowledge of and experience in prosecuting class actions in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they have represented.  The experience, resources and knowledge Class Counsel bring to this Action is extensive and formidable.  Needless to say, Class Counsel is qualified to represent the Settlement Class and will, along with the class representatives, vigorously protect the interests of the Settlement Class.  Class Counsel, who are experienced in other similar class action litigation, are extremely proud of the result achieved in this Settlement.  The opinion of experienced counsel should be weigh heavily in favor of final approval of the Settlement.

### 6.    The Reaction of Absent Settlement Class Members.

45.    To date, not a single Settlement Class Member has objected to the Settlement. Further, only 3 of the approximately 61,000 members of the Settlement Class, representing 2 unique accounts, have requested to be excluded.  The overwhelming positive Settlement Class response to the Proposed Settlement weighs heavily in favor of approval.

### 7.    The Settlement is Consistent With the Public Interest.

46.    Plaintiffs aver that there is no countervailing public interest present in this

litigation which would militate against the strong public interest in the settlement of this complex action.  Indeed, given the risks detailed above, this Settlement serves the public interest by conserving the resources of the parties and the court, and by promoting the strong public interest in encouraging settlement of complex litigation and class action suits.

        **H.**      **<u>Class Representative Service Awards.</u>**

      47.     Pursuant to the Settlement, Class Counsel request, and Citizens Bank does not oppose, Service Awards of $5,000 for each named Plaintiff.   If the Court approves them, the Service Awards will be paid from the Settlement Fund, and will be in addition to the relief to which the Plaintiffs are entitled under the terms of the Settlement.   These awards will compensate the Plaintiffs for their time and effort in the Action and for the risks they undertook in prosecuting the Action against Citizens Bank.

      48.     Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding responsive documents and information; and (3) participating in conferences with Class Counsel.  Plaintiffs were prepared to assist in formal discovery, including preparing for and attending their depositions.  In so doing, the Plaintiffs were integral to forming the theory of the case.

      49.     Plaintiffs not only devoted their time and effort to the litigation, but the end result of their efforts, and those of Class Counsel, resulted in substantial benefit to the Settlement Class.  The amount requested also accords with incentive awards granted by courts in similar other Overdraft Fee cases throughout the country.  If the Court approves them, the Service Awards of $10,000 (to be paid from the Settlement Fund) will be 0.5% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable service awards.

I.    **Attorneys' Fees and Expenses.**

50.    Class Counsel respectfully request attorneys' fees of thirty-three percent (33%) of the Settlement Fund created through their efforts.  The fee requested here is also in line with the fees awarded in other overdraft fee class actions settled and approved throughout the country.  Class Counsel also seek reimbursement of certain out-of-pocked costs and expenses totaling $91,529.14, which were reasonably incurred in connection with the prosecution of this Action, and consist of $75,900 in expert fees, including those of Arthur Olsen, whose analysis was necessary to determine the damages for Settlement Class Members in the Action and to properly identify Settlement Class Members and to allocate the Settlement Fund; $13,901.14 in travel-related expenses; and $1,728.00 in Court filing fees.  Class Counsel have limited the categories of expenses for which reimbursement is being sought to those enumerated above, and are not seeking reimbursement for thousands of dollars in other expenses that are routinely sought and recovered in common fund class actions.  These out-of-pocket expenses were reasonably and necessarily incurred in furtherance of the prosecution of this Action.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

### 1.    The Value of the Benefit Rendered to the Class.

51.    As noted above, the Settlement establishes a common fund of $2,000,000, and Notice has been disseminated to approximately 61,000 members of the Settlement Class.  If the Court approves the Settlement, Plaintiffs and the Settlement Class will recover approximately thirty percent (30%) of their most probable damages.  In light of the significant risks after *Gutierrez* and the arguments raised in the Motions to Dismiss, the $2,000,000 Settlement Fund, in addition to Citizens Bank's agreement to separately pay up to $200,000 toward the costs of Notice and Settlement administration, is an excellent result.  Accordingly, this factor weighs

heavily in favor of the requested fee award.

## 2. The Value of the Services on an Hourly Basis.

52.     The collective lodestar for Class Counsel is $557,406.50, based upon 1,279.90 hours expended, multiplied by a blended Class Counsel rate of $429.47 per hour.  Class Counsel submit that these rates are reasonable in similar class action matters in and out of this Circuit and should be approved.  Thus, in the event the Court awards the request fee of 33% of the Settlement Fund or $660,000, this would result in a multiplier of 1.18.  The multiplier here is well within the range adopted by courts in the Sixth Circuit.  Moreover, when evaluating the lodestar multipliers of the other overdraft fee cases throughout the country, courts have consistently awarded fees resulting in lodestars with multiples ranging between 3 and 9.

53.     Class Counsel spent years developing the theories underlying the claims in the instant Action through their efforts in litigating (with both success and failure) other overdraft fee cases throughout the country.  These efforts accrued to the benefit of Plaintiffs and the Settlement Class.

54.     Class Counsel spent significant hours investigating the claims of several potential plaintiffs against Citizens Bank.  Class Counsel interviewed a number of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers.  This information was essential to Class Counsel's ability to understand the nature of Citizens Bank's conduct, the language of the Account agreements at issue and potential relief and remedies.

55.     Class Counsel expended considerable resources researching and developing the legal claims at issue.  Class Counsel expended considerable time in fully briefing Citizens Bank's motions to dismiss, and in travelling to Detroit to argue before this Court.  Class Counsel also spent a massive amount of time preparing for settlement discussions, which required Class

Counsel to analyze a large amount of data and work with their expert regarding Citizens Bank's Overdraft Fee revenue.  Prior to Settlement, Class Counsel and Plaintiffs' expert used this data to analyze the range of alleged damages at issue in this case, comparing Overdraft Fees actually charged to the Overdraft Fees that would have been charged had Citizens Bank not employed the challenged practice.

56.    After the Parties executed the Summary Agreement in connection with the Settlement, Class Counsel spent an enormous amount of time negotiating the specific terms of the Settlement.    In addition, Class Counsel engaged in an extensive settlement-related investigation and confirmatory discovery, to determine—among other things—an appropriate plan for allocation of the Settlement Fund.  That investigation required Plaintiffs' expert to analyze the relevant transactional data related to Overdraft Fees imposed upon members of the Settlement Class, and to help determine the fairest and most appropriate distribution formula in light of the data that Citizens Bank possessed and maintained.  Moreover, Class Counsel devoted hundreds of hours to assist Citizens Bank in completing its address database to allow for Notice to be disseminated to former Account holders.  Finally, Class Counsel spent extensive time preparing the preliminary and final approval papers in support of the Settlement.

### 3.    Whether the Services Were Undertaken on a Contingent Fee Basis.

57.    In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment.  That risk warrants an appropriate fee.  The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts.  Only the most experienced plaintiffs' litigation firms would risk

the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.  Apart from the risk of no recovery, the deferral of fees in such an undertaking while at the same time advancing possibly hundreds of thousands of dollars in expenses would deter most firms.

58.     Class Counsel frequently represent commercial and personal injury clients on a contingent basis.  In commercial cases, it is not infrequent for fees to be in the range of 40% to 45% of the recovery.  Similarly, contingency fees in personal injury cases range between 33.33% and 40.0%.  If there is an appeal taken, fees increase an additional 5.0% above the base agreed upon percentage.   Accordingly, Plaintiffs' Counsel's fee request of 33% of the Settlement Fund is well within the range of similar private contingent fee arrangements.

59.     Despite Class Counsel's effort in litigating and settling this Action for over a year, Class Counsel remains completely uncompensated for the time invested in the Action, in addition to the expenses advanced.  There can be no dispute that this case entailed substantial risk of nonpayment.  The time Class Counsel spent on this case was time that could not be spent on other matters.  Class Counsel knows first-hand the risk of working on overdraft fee cases that resulted in little or no recovery after incurring hundreds of hours of attorney time and tens of thousands of dollars advanced in litigation expenses.

**4.     Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others.**

60.     Class Counsel's fee request is well within the range of awards in similar cases both in the Sixth Circuit and elsewhere.  It is these types of awards that maintain an incentive for lawyers, like Class Counsel, to take on cases, wholly on contingency, prosecuting them for years, all the while never knowing whether they will in the end recoup substantial investment of dollars of time and costs invested in the case.  Here, Class Counsel took on representation of this class in

what were simultaneously the worthiest and riskiest of circumstances.  Society has an interest in adequately compensating counsel who take on such risks to ensure that classes will be able to find representation.

### 5.      The Complexity of the Litigation.

61.      The claims and defenses are complex and litigating them is both difficult and time-consuming.  Although this Action settled after less than a year of litigation, recovery by any means other than settlement would have required additional years of litigation.  In fact, many overdraft fee class actions were litigated for years prior to reaching a settlement.  Others have already been tried or are at a posture where they are close to being tried.  Class action litigation based on overdraft fees associated with Debit Card Transactions were novel claims when Class Counsel began filing such cases over three years ago.  These cases are complex, but there can be no question that Class Counsel's experience and knowledge from those cases resulted in the settlement of this Action at this early juncture.  As with the other cases that have gone or are going to trial, proceeding forward would have consumed millions of dollars of Class Counsel's time and delayed any payments to class members for several years.

### 6.      The Professional Skill and Standing of Counsel Involved on Both Sides

62.      Litigation of this Action required counsel highly trained in class action law and procedure as well as the specialized issues presented here.  Class Counsel possess these attributes, and their participation added immense value to the representation of this large Settlement Class.  The record demonstrates that the Action involved a broad range of complex and novel challenges, which Class Counsel met at every juncture.

63.      In addition, Class Counsel is highly experienced in this particular area of fee litigation, having litigated and settled more overdraft fee class actions than any other firms in the

country. Class Counsel used the extensive knowledge and experience obtained from those cases and applied it to the instant Action in order to achieve a fair and reasonable settlement, at an early juncture, for the Settlement Class Members. Further, considering the potential for this Action to turn into a multi-year litigation (as has happened in several other overdraft fee class actions), Class Counsel's ability to negotiate the instant Settlement at the early stages of this litigation demonstrates their high level of skill and efficiency.

64.     In evaluating the quality of representation by Class Counsel, the Court should also consider the quality of opposing counsel. Throughout the litigation, Citizens has been represented by extremely capable counsel. These were worthy, highly competent adversaries.

**J.      Class Certification for Settlement Purposes**

65.     Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

66.     The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of over 60,000 Citizens Bank customers, and joinder of all such persons is impracticable.

67.     The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Citizens Bank's systematic practice

of Debit Re-sequencing for the sole purpose of increasing overdraft fee revenue, as alleged in the Complaint.

68.     Plaintiffs are typical of absent members of the Settlement Class because they suffer from the same injuries, and because they will equally benefit from the relief provided by the Settlement.

69.     Adequacy is established because Plaintiffs interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and absent members of Settlement Class have an equally great interest in the relief offered by the Settlement, and absent members of Settlement Class have no diverging interests.  Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer actions similar to the Action.  Class Counsel have devoted substantial time and resources to vigorous litigation of the Action from inception through the date of the Settlement.

70.     Plaintiffs satisfy the predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class.  For example, each member of the Settlement Class' relationship with Citizens Bank arises from an account agreement that is the same in all relevant respects to other members of the Settlement Class' account agreements.

* * *

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida, on November 26, 2013.

s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow

22

I declare under penalty of perjury of the laws of Michigan and the United States that the foregoing is true and correct, and that this declaration was executed in Rochester, Michigan on November 26, 2013.

/s/ E.Powell Miller
E. Powell Miller

I declare under penalty of perjury of the laws of the District of Columbia and the United States that the foregoing is true and correct, and that this declaration was executed in Washington, D.C. on November 26, 2013.

/s/ Hassan A. Zavareei
Hassan A. Zavareei

23